Story v. The Norwich and Worcester Railroad Company and another.

## STORY vs. THE NORWICH AND WORCESTER RAILROAD COMPANY AND ANOTHER.

Fraud is often a conclusion of law, which courts will infer from acts and circumstances, whether the existence of a fraudulent purpose, in the strict sense, be proved or not.

In equity, fraud "includes all acts, omissions and concealments, by which an undue and unconscientious advantage is taken of another."

Although there must be something special in a case of fraud, and in a case of combination or confederacy, to make either an independent ground of chancery jurisdiction, yet a combination to defraud, will, in general, be relieved against in equity.

Equity will enforce an award of arbitrators, when the award provides a specific remedy, or prescribes the execution of a specific act, other than the payment of money.

Where an award provided, that, in the event of the non-payment of a certain sum of money, judgment should be entered against the defendants in a certain suit then pending for its recovery, and by a connivance between the defendants and a third party, who improperly assumed to act as the plaintiff's assignee, the plaintiff was nonsuited, without his knowledge or consent, so that the specific remedy, prescribed by the award, was defeated, it was held, that these facts brought the plaintiff's case within the cognizance of a court of equity, who, under the prayer for general relief, ordered the direct payment of the money, as the proper remedy, under the circumstances.

THIS was a bill in chancery, brought by Miner C. Story against the Norwich and Worcester Railroad Company and John T. Cahill. At the term of the superior court, holden in January, 1854, the cause was referred to a committee, whose report embraced substantially the following facts.

In the year 1843, Miner C. Story, the plaintiff, made four contracts with the said Norwich and Worcester Railroad Company, for building the entire extension railroad of said company, from the city of Norwich to its termination at Allyn's Point, and for constructing for said company a wharf at said Allyn's Point. One of said contracts embraced the work to be done on, and materials to be furnished for, a certain portion of said extension road, designated in said contracts, and known as section numbers four and five.

Said Story, by said contracts, was to receive from said company, for the work to be done, and materials to be furnished for said section four, $9,751, and for the work to be done, and materials to be furnished for said section five, $6,969; or for the whole work and materials on said sections, $16,720. Said work and materials were to be paid for in monthly payments, as the work progressed, to the extent of four-fifths of the monthly estimates made of the same, by the engineer of said company, and the balance upon the completion of said contract.

After making said contract for sections four and five, John T. Cahill, one of the defendants, made a contract with Story, by which Cahill agreed to perform the whole work, and furnish all the materials, on said sections four and five, which said Story was bound to perform and furnish, by his last-mentioned contract with said railroad company, and was to receive therefor from said Story, the sum which Story was to receive from the railroad company, for the same work, namely, the sum of $16,720, and payable in the same manner as the said Story was to receive the same.

Said Story gave said Cahill an order on said railroad company, to pay directly to Cahill, from time to time, whatever might become due said Story for the work and materials on sections four and five, on his contract with the company, which order said company refused to accept or to pay.

The firm of Fuller & Broad afterward contracted with Cahill to perform that part of the work on sections four and five, which consisted of pile-bridging, and to furnish the materials therefor, for the price of $3.75 per lineal foot, which pile-bridging was included in Cahill's contract with Story.

All the work that was performed, and materials that were furnished in the construction and building of sections four and five, under said contract, was performed and furnished as follows, namely : said Cahill performed and furnished all except the pile-bridging, and said Fuller & Broad performed the work, and furnished the materials for the pile-bridging.

Said Story made other contracts with sundry other persons for the performance of various other portions of the work, and furnishing the materials for which he had contracted on said extension road, and among others with John O'Halloran, Stephen H. Cole, and with said Fuller & Broad.

Said Story, and his said sub-contractors, performed a large amount of work and furnished a large amount of materials under their several contracts, and claimed that they had each performed and fulfilled their various contracts for the work and materials on said extension road, so as to entitle Story to receive his pay therefor, from the railroad company, under his contracts with said company, and each of said sub-contractors to receive from Story their pay under their several contracts with him.

Said Story, Cahill, O'Halloran, Cole, and Fuller & Broad, each claimed that, in addition to the work done, and materials furnished by them, under their several contracts and sub-contracts, upon said extension road, they had each done much more work, and furnished more materials than said contracts required them to perform, in consequence of changes made and required by said railroad company in the work upon said extension road, and for which they were severally entitled to receive pay from the railroad company as for extra work and materials, beyond the amount required to be done under their several contracts.

After Story and his several sub-contractors had ceased to work on said extension road, controversies arose as to whether the contracts, between Story and the railroad company, had been fully performed, and also whether extra work had been done, and extra materials furnished, for which the company were liable; the company claiming that said contracts had not been performed, that they were not liable for any extra work or materials, either to Story or to said subcontractors, and that the company had expended large sums

of money in finishing the said contracts, which sums were chargeable to Story.

As between Story and Cahill, in relation to the work on sections four and five, the question arose whether Cahill had fully performed the contract between them; and like questions arose between Story and the other sub-contractors, in relation to the work done and materials furnished by them under their several sub-contracts with Story.

Said O'Halloran, on the 10th day of November, 1843, brought his action of book debt against said Story, by process of foreign attachment, to the county court for New London county, and trusteed said railroad company as the debtors of Story.

At the June term of said court in 1844, judgment was rendered in said action in favor of O'Halloran, for twenty-two hundred dollars damages, and seven dollars, eighty-seven cents, costs of suit. O'Halloran, on the 31st day of October, 1844, brought a *scire facias* against said railroad company to the county court for New London county, to collect his said judgment against said Story, which *scire facias* was continued in said court until the November term thereof in 1848, and was then withdrawn.

Said O'Halloran brought his action of book debt against said railroad company, on the 23d day of August, 1844, to the superior court for New London county, for extra work done and extra materials furnished upon said extension road, which last-mentioned action was continued in said superior court until the March term thereof in 1846, and was then withdrawn.

Said Cahill, on the 18th day of November, 1843, brought his action of book debt against said Story to the county court for New London county, by process of foreign attachment, and caused the writ in said action to be served upon the said railroad company as the debtors of said Story, and said action was appealed by said Story to the superior court for said county, and auditors were appointed therein, and a

time fixed for the hearing, when it was proposed by said Cahill to said Story, that Story should permit judgment to be taken at once against him in said action, for the purpose of facilitating the bringing of a *scire facias* upon such judgment against said railroad company, and of more speedily obtaining a judgment against said railroad company on such *scire facias*, and of obtaining a determination of the question, whether the contracts with said railroad company had been fulfilled by Story and his sub-contractors, so as to entitle Story to receive any further pay from said railroad company therefor, and said sub-contractors to receive any further pay from Story. It was thereupon agreed between Story and Cahill, that Cahill might take a judgment in said action against Story, for whatever amount Cahill might claim to be due to him from Story, with the understanding and stipulation that Cahill should enforce and collect the same only out of what might be due to Story from said railroad company, and to the extent only of the amount which should be found due to Story, from the railroad company, for that portion of Story's contracts which had been performed by Cahill, under his sub-contract with Story.

The following writing, expressing a part of the aforesaid arrangement, was thereupon executed by Cahill and Story, on the day of its date :

"Norwich, April 1, 1846.

" It is hereby agreed between Miner C. Story, and John T. Cahill, that if in the case between them as parties, now pending in the superior court, for the county of New London, judgment shall be entered by default of this date, that the said judgment shall not be prosecuted, only as against the Norwich and Worcester Railroad Company, who are copied as garnishees in said suit."

In pursuance of this arrangement, judgment by default was rendered by said superior court at its March term, in 1846, in favor of Cahill against Story, in said action, for the

sum of eight thousand three hundred and thirteen dollars damages, and for thirty-three dollars, ninety-four cents, costs of said action, which sum said Cahill claimed to be due to him from said Story.

The following bill of particulars of the various items of which laid last-mentioned sum was composed, was filed by said Cahill with the clerk of said superior court:

"Norwich, April 1, 1846.

"Miner C. Story, Esq.,

"To John T. Cahill,      Dr.

| | |
|---|---|
| "1843.    To balance of contract price for making two sections of extension railroad, as per contract, | $6,053.00 |
| "Lack of pile-bridging, as per agreement, | 1,000.00 |
| | $7,053.00 |
| "April, 1846.   Interest on the same to date, | 1,260,00 |
| "Judgment for damages, | $8,313.00" |

Said Cahill had no other or further claim on Story, except such as arose from his performing labor and furnishing materials for said extension road.

Said Cahill, on the 19th day of March, 1845, brought his action of book debt against said railroad company, to the superior court for New London county, and at the March term of said court, in 1847, judgment was rendered in his favor in said action, for six thousand four hundred and fifteen dollars, four cents, damages, and one hundred seventy-four dollars, forty-three cents, costs of suit.

Said judgment embraced all the extra work done, and extra materials furnished by said Cahill, beyond the work required to be done by his said sub-contract with said Story; and was satisfied by said company, in October, 1847.

On the 5th day of December, 1843, said Stephen H. Cole brought his action of assumpsit against said Story, by process of foreign attachment, to the county court for New Lon-

don county, and trusteed said railroad company as the debtors of Story. At the September term of said superior court, in 1849, judgment was rendered therein, in favor of said Cole, against Story, for fifteen hundred and twenty-four dollars, eighteen cents damages, and seventy dollars, forty-eight cents costs of suit.

On the 9th day of March, 1848, said Cole brought his action of book debt against said railroad company, to the superior court for New London county, and at the March term of said court, in 1849, it was withdrawn.

On the 6th day of July, 1848, said Story brought his action of debt against said railroad company, to the superior court for New London county, on his contracts with the company, for the amount due from the company to him, for the work done and materials furnished on said extension road under said contracts, and for extra work done and extra materials furnished by him on said extension road, beyond what he was bound to do under his contracts with the company, which last mentioned action was pending in the superior court until its September term in 1849.

On the 6th day of December, 1844, the railroad company brought their bill in chancery to the superior court for New London county, against said Story, Cahill, O'Halloran, Cole and others, for the adjustment of all the matters and claims aforesaid, between each of the several parties, to which some of the defendants demurred, and said petition was adjudged insufficient by said court, and was dismissed.

After said judgment was rendered in favor of Cahill against Story, the former, on the 25th day of August, 1846, in pursuance of his agreement with Story, and for the purposes proposed by him, as before stated, brought his *scire facias* against said railroad company to the superior court for New London county.

The trial of said *scire facias* was commenced at the September term of said court in 1848. Said Story and several of his sub-contractors coöperated with Cahill in the prepara-

tion and prosecution of said case. All said sub-contractors considered themselves interested in the question, the determination of which was one object for which said *scire facias* was brought.

For the purpose of enabling Story to be a witness on said trial in behalf of Cahill, the latter executed and delivered to Story, during the trial, the following discharge:

" Received, New London, Sept. 13, 1848, of M. C. Story, one dollar, in consideration of which I hereby agree not to make any claim or demand against him individually on a judgment in my favor against him, on which the Norwich and Worcester Railroad Company are copied by me in foreign attachment as debtors of said Story, reserving to myself the right to proceed against said company in *scire facias,* to recover said judgment.

"JOHN T. CAHILL."

Story was thereupon admitted as a witness in behalf of Cahill, and among other things he testified that he had no interest, directly or indirectly, in the judgment of Cahill against him.

In the course of the trial of said *scire facias,* the railroad company sought to make use of the aforesaid *scire facias* brought by O'Halloran against them, which was then pending, and was held by some third person in trust for said company, and was under their control, for the purpose of postponing, or in some way prejudicing said claim of Cahill.

Sundry informalities in the proceedings, both in the *scire facias* of O'Halloran, and in the original suit of Cahill against Story, were claimed by the respective parties to have been discovered. A suspension of said trial was allowed by the court for the purpose of enabling the parties to negotiate terms of settlement, or of submission to arbitration.

During said suspension, and before a submission to arbitration was agreed upon, an assignment was executed, and delivered by said Story to said Cahill, dated September 15, 1848, of all the money, which was due, or might be due to

him, from said railroad company, for labor and materials furnished for said extension road, and said assignment directed said company to pay over the same to Cahill, and in default of such payment, empowered Cahill to sue for the same. Said assignment was executed, in consequence of the apprehension, occasioned by said claim of said railroad company, of an informality in the proceedings, in said original suit of Cahill against Story, which it was feared might postpone the lien of Cahill upon the amount due from said company to Story, or otherwise prejudice Cahill's claim upon the company, and for the sole purpose of giving to said judgment of Cahill against Story, the same priority of lien as it would have, if no such informality existed, and upon the understanding and agreement that it should have no other, or greater effect, than to give to Cahill his priority of lien in the collection of his judgment against Story, from said company.

Before the time for which the suspension of said trial was allowed, had expired, the terms of a submission to arbitration of their respective claims were agreed upon by the parties to said *scire facias*, on trial, and by Story and several of his sub-contractors; and a writing of submission was thereupon drawn up, and was then executed by such of the parties as were present, and was subsequently executed by the remaining parties thereto, and said *scire facias* of Cahill was continued to the next term of the court.

It was agreed by said submission, that the legal priorities of said parties should be preserved, and if anything should be found to be due by said company to said Story, that said parties should be entitled to receive the same in the order of their several attachments. And that the amount found due by said arbitrators, should be the rule of damages in said several suits, and said auditors should award as to the amount due, by any of the parties signing said submission, to any other of said parties, and finally adjust and settle all questions between them or any of them.

The time, within which said award was to be made, was extended to the first day of June, 1849.

The arbitrators, named in said submission, afterward met all the parties thereto, and heard them all, with their evidence and counsel, in relation to all the matters so submitted to them. At the conclusion of said hearing, when all the parties to said submission were present, either personally or by counsel, the arbitrators inquired of the various parties before them, whether it was understood by them that the arbitrators were to go back of the judgment in favor of Cahill against Story, and of the aforesaid assignment from Story to Cahill, or whether the amount, found due to said Story from said company, was to be allowed to Cahill to the extent of his judgment and assignment, and by virtue of them. The counsel of Cahill thereupon at first claimed that the amount found due to Story, should be allowed by the arbitrators to Cahill. Said Story thereupon claimed that it was not to be so allowed, but that the arbitrators were to go back of the judgment and assignment, and were to allow to Cahill only what they should find due to Cahill, and that the rest should be allowed to him, Story. All parties then assented to said claim of Story.

In consequence of said assent and understanding of said parties, the arbitrators, in making up their award on said submission, went back of the judgment and assignment, and determined the respective rights of the several parties to the moneys which were due from the railroad company to Story, irrespective of the judgment and assignment.

Said arbitrators made and published their award in writing, on the 16th day of May, 1849, and all the parties thereto were fully informed of the same.

On the 26th of May, 1849, Story paid said arbitrators the full amount of their fees, and of the costs and expenses of the arbitration, as allowed and taxed by the arbitrators, namely, the sum of two hundred and seventy-eight dollars,

thirty-one cents, no part of which sum has ever been repaid to Story.

After making and publishing said award, Cahill set up the claim that he was entitled, by virtue of said assignment, to receive for his own use, of said company, the moneys directed in said award to be paid to Story, and demanded of the company, that the same should be paid to him, and claimed that he was authorized by the assignment to execute a valid discharge for the same.

Said railroad company knew that Story denied the right of Cahill to said moneys, or to execute a valid discharge for the same, and that he claimed that the same should be paid to him.

Said company did not use reasonable care and diligence in ascertaining the respective rights of Cahill, and of Story, to said moneys so awarded to Story; and through want of such care and diligence, thinking that Cahill might have a right to receive the moneys, directed by said award to be paid to Story, did offer to Cahill to pay to him the moneys, awarded both to him and to Story, if he would indemnify and save harmless said company from all loss or damage, which the company might sustain by reason of such payment, and would secure such payment in the bonds of the company at their par value, then of the market value of sixty-seven cents on the dollar.

Cahill agreed so to indemnify the company, and to receive payment in the manner proposed, and said company, relying on the indemnity so agreed to be given, delivered to Cahill seventeen bonds of said company, of different denominations, of the par value in all of nine thousand dollars, and also four hundred and thirty-eight dollars, sixty-five cents, in cash, which bonds and cash, Cahill then received, in full satisfaction of the moneys, directed in the award to be paid by the railroad company to him and to Story, and of one-half of the fees of the arbitrators, which by the award were

Story *v.* The Norwich and Worcester Railroad Company and another.

directed to be paid to Story, and did thereupon execute and deliver to the company the following writing :

"In consideration of nine thousand, four hundred and thirty-eight dollars, sixty five cents, received of the Norwich and Worcester Railroad Company, by their treasurer, G. L. Perkins, in full for the amount awarded by Honorable Thomas S. Williams and Honorable Henry M. Waite, arbitrators, by their award dated May 16th, A. D. 1849, to myself and Miner C. Story, I hereby release and discharge said railroad company from said claims and demands, and all claims and demands against said company, and the suits pending in court in my favor and in favor of said Story, said company having paid me the taxable cost in this suit in my favor, and in favor of said Story. And I hereby agree to indemnify and save harmless said company from any claim or demand by said Story, or any person claiming for, or under said Story, for or on account of said sums so awarded to said Story, and from loss or damage arising therefrom, and especially a claim of John O'Brien against said Story, on which suit has been commenced by said O'Brien against said Story, and a copy left with the said company, claiming that they are the agents, factors, trustees and debtors of said Story ; and having received from said company the one-half of the arbitrators' fees and expenses, the one-half being the sum of one hundred and twenty-one dollars, sixteen cents, I agree to save the said company harmless from any claim, from any person, for payment of any further sum, on account of said fees and expenses.

"John T. Cahill. [seal.]

| | | | | | |
|---|---|---|---|---|---:|
| 4 bonds for $1,000, viz., | 13, 14, 43, 44, | | | | $4,000.00 |
| 8 " " 500, " | 313, 316, 318, 327, 328, 329, 340, 341, | | | | 4,000.00 |
| 5 " " 200, " | 369, 370, 371, 372, 373. | | | | 1,000.00 |
| | | | | | 9,000.00 |
| Cash, | | | | | 438.65 |
| | | | | | $9,438.65 |

" Received the above bonds and cash for the amount above expressed in receipt.

"John  T.  Cahill."

For the purpose of further security, and as collateral to said indemnity, Cahill, at the same time or soon afterward, delivered to the company, bonds of the New Hampshire Central Railroad Company, of an amount and value sufficient to meet the liabilities of his said indemnity.   All the real and personal property of said railroad company, was at this time encumbered with mortgages ; and the company had no means of meeting their liabilities except by issuing their bonds ; and it was usual for the company for a considerable period of time before and after this settlement with Cahill, to settle all claims against them, except for current expenses, by issuing and delivering their bonds, payable at a distant period.

Said Cahill and said company, after the aforesaid settlement, coöperated in endeavoring to prevent Story from obtaining a judgment in his action against the company, then pending before the superior court for New London county.   And afterward, at the September term of said court in 1849, said company and Cahill procured said last-mentioned action to be nonsuited, and a nonsuit was, by order of the court, entered in said case.

Soon afterward, said railroad company delivered up to Cahill the bonds of the New Hampshire railroad company, which he had left with said company as collateral security.

After said award was made and published, said railroad company paid in their bonds, estimated at their par value, to Broad & Daniels, the amount directed by the award to be paid by the company to them.

In the month of January, 1850, Story made a demand on the railroad company for the payment to him of the amount directed in the award to be paid by the company to him ; and the company refused to pay the same to him, or any part thereof, claiming that they had already paid the same

to Cahill, by virtue of his judgment against Story, and of said assignment.

No part of the moneys so awarded to Story, has ever been paid to him; and he used reasonable diligence in pursuing his claim against said company under said award, from the time he was notified of the same.

The court accepted the report of the committee, and reserved the case for the advice of this court.

*Hungerford & Cone*, and *Bulkeley*, contended, that,

From the facts, set forth in the bill, and found by the committee, the plaintiff was entitled to relief.

1. If the court originally had no jurisdiction, upon the ground of an adequate remedy at law, and that appeared on the face of the bill, and there is nothing in the bill to give jurisdiction, more than is found by the committee, the court will not dismiss it on that ground. *Clark* v. *Flint*, 22 Pick., 231. *Raynham* v. *Raynham*, 23 Pick., 148. *Stockton* v. *Williams*, Walk., 120. *McDonald* v. *Crocket*, McC. Ch., 135. *Ludlow* v. *Simond*, 2 C. C. E., 56. *Underhill* v. *Van Cortland*, 2 John. C. R., 369. *Livingston* v. *Livingston*, 4 John. C. R., 287. *Granden* v. *LeRoy*, et. al., 2 Paige, Ch. R., 509. *Wiswall* v. *Hall*, 3 Paige, Ch. R., 313. *Brainard* v. *Brainard*, 15 Conn. R., 575. *Lee* v. *The New London Bank*, 11 Conn. R., 120. *The City of Hartford* v. *Chipman*, 21 Conn. R., 488. *Bunnell, &c.*, v. *Read*, 21 Conn. R., 586.

The court has jurisdiction of the cause to set aside the assignment and discharge, or enjoin against this being set up, or used, as any defence at law. *Hamilton* v. *Cummings*, and authorities cited, 1 Johns. Ch. R., 517. *Johnson* v. *Hendley*, 5 Munf., 219. *Elliott* v. *Piersell*, 1 McLean, 11. *Gerritt* v. *Miss. & Ala. R. R. Co.*, 1 Free. C. C., 70. *Maise* v. *Garner*, Mart. and Yerg., 382. *Chipman* v. *City of Hartford*, 21 Conn. R., 488.

2. The plaintiff is entitled to a specific execution of the award, and to a judgment and execution in the suit, then

pending in his favor against the railroad company, and of this we have been defeated, if not defrauded.

The court may, and will, if necessary, decree a specific execution of the award. *Smith* v. *Smith*, 4 Rand., 95. *McNeil* v. *Magee*, 5 Mas., 244.

The remedy at law, upon the award, is not adequate, and the plaintiff is entitled to each, and every remedy, given by the award. *Boyce* v. *Grundy*, 3 Pet. S. C. U. S., 215. *Hollingshead* v. *McKensie*, 8 Go. Dec., 457. *Tappan* v. *Evans*, 11 N. H., 311. *Montville* v. *Haughton*, 7 Conn. R., 549. *New London Bank* v. *Lee*, 11 Conn. R., 312. *Chipman* v. *The City of Hartford*, 21 Conn. R., 488.

3. It is competent for the court to decree a specific execution. 2 Sto. Eq., 173. *Woodworth* v. *Van Buskirk*, 1 Johns. C. R., 432. *Floyd* v. *Paine*, 6 John. C. R., 479. *Root* v. *Brown*, 1 Bibb., 354. *Bush* v. *Craig*, 4 Bibb., 168. *Faulkner* v. *Harwood*, 6 Rand., 125. *Carrington* v. *Holabird*, 17 Conn. R., 530.

4. The court can order the case to be restored to the docket, and judgment *nunc pro tunc* entered therein for the amount directed in the award, or for that amount with the interest thereon, as of the term of the court, at which the judgment is entered up. *Griffith* v. *Ogle*, 1 Bin., 172. 6 S. and R., 126. *Allston* v. *Sing*, Riley, 199. *State* v. *The Waldo Bank*, 7 Shep., 470. *Collins* v. *Prentiss*, and cases therein cited, 15 Conn. R., 422.

5. If the remedy would be doubtful at law, chancery has jurisdiction; and if there was such an uncertainty in the present case, the court will sustain the cause. *Whitlock* v. *Duffield*, 2 Edw. Ch., 366. *Amer. Ins. Co.* v. *Fisk*, 1 Paige Ch. R., 90. *Livingston* v. *Livingston*, 4 John. Ch. R., 287. *Boyce Ex'rs* v. *Grundy*, 3 Pet., 210. *Chipman* v. *The City of Hartford*, 21 Conn. R., 488. *Ankrim* v. *Woodworth*, 1 Harringt., 335. *Phalen* v. *Clark*, 19 Conn. R., 433.

If the court has jurisdiction, in any aspect of the case, it will retain the cause, for the purpose of doing complete jus-

tice between the parties. *Rees* v. *Smith,* Wilc. C. R., 132, and other cases there cited. *Miami Exploring Co.* v. *The United States Bank,* Wri., 249: *Carpenter* v. *Mutual Safety Ins. Co.,* 4 Sanf., 408. *Sanborn* v. *Kittredge,* 20 Verm. R., 632. *Nor. & Wor. R. R. Co.* v. *Story,* and cases cited by counsel, 17 Conn. R., 364.

6. Under the prayer for general relief, the court may grant any relief appropriate to the case. *Prewitt* v. *Graves,* 5 J. J. Marsh., 114. *Bolware* v. *Craig,* 6 Litt., 407. *Taylor* v. *Mu. Safety Ins. Co.,* 9 How., 390. *Bentley* v. *Cowman,* 6 Gill. & J., 152. *Gibson* v. *McCormick,* 10 Gill. & J., 66. *Hopson* v. *McArthur,* 16 Pet. Con. R., 182. *Driver* v. *Fortner,* 5 Port., 10. *Thomason* v. *Smithson,* 7 Port., 144. *Marine and Fire Ins. Co.* v. *Early,* Charl. R. M., 279. *Wilkins* v. *Wilkins,* 1 Johns. C. R., 111. *Kaine* v. *Mancius,* &c., 5 Johns. C. R., 89.

*McCurdy, Perkins* and *Wait,* contended,

That on the finding of the committee the court had no jurisdiction, as the plaintiff had a perfect remedy at law.

I. The committee find the facts respecting the judgment, assignment, confession of Story, submission, hearing and award.

The award, made in view of all the facts, is, that the railroad company owe Story a certain sum, which they are ordered to pay him. And authority is also given to Story, to take judgment for that amount, in his action then pending.

Story might, therefore, either take judgment in that suit, or bring his action directly on the award.

In either case, his remedy is complete. If, in either case, the company should set up in defence the judgment, assignment and order in favor of Cahill, the reply would be that the submission embraced these very matters, and the award overrides them all, and this reply would be as available at law as in equity. *White* v. *Wheaton,* 16 Conn. R., 530. 2 U. S. Eq. Dig., p. 153, No. 365–397.

II. There can be no waiver of the law, in such case. It is not a mere rule of practice, but a limitation of the power of the court by statute. This is peremptory, and acts directly on the court, and is not intended as a privilege to parties.

The court has no jurisdiction over the subject, presented by the committee. That is an ordinary money claim on an award. The subject presented in the petition is a case of fraud. 12 Pet., 657. 1 Hoff. C. R., 1. 19 Maine, 124. *Griswold* v. *Mather*, 5 Conn. R., 639. 2 Hill, 159. 3 Fairf., 454. 6 Paige C. R., 95. 3 Dessau., 6. 13 Conn. R., 498. 17 Conn. R., 370. *Lockwood* v. *Knapp*, 4 Conn. R., 257. *Perkins* v. *Perkins*, 7 Conn. R., 558. *Denison* v. *Denison*, 16 Conn. R., 34. *Maine* v. *School Dist. of Preston*, 18 Conn. R., 214. *Wildman* v. *Rider*, 23 Conn. R., 172. U. S. Dig., for 1849, p. 153, No. 4, 5, 20. U. S. Dig., 1850, 154, No. 9. U. S. Dig. for 1853, 222, No. 31, and also 276, No. 992–93. 2 U. S. Eq. Dig., 146, No. 203, 204, 206, 207, 208, 202, 212, 214, 216, 220, 221, 225, 230, 114, 115.

But there was no waiver in this case; for it was only after the report he could raise the objection.

The petitioner avers fraud and combination. This gives jurisdiction and excludes a demurrer. But not being found, the want of jurisdiction then first appears. *Phalen* v. *Clark*, 19 Conn. R., 421. U. S. Dig. for 1847, p. 118, No. 31, or 6 Howard, 163. U. S. Dig. for 1847, 187, No. 6, 7. 5 Conn. R., 86.

Our objection was taken on the finding, according to the uniform usage in Connecticut. *Johnson* v. *Sanford* and others, 13 Conn. R., 461. *Bailey* v. *Skinner*, 7 Conn. R., 496. *Gillett* v. *Hall*, 13 Conn. R., 426. *White* v. *Wheaton*, 16 Conn. R., 530. *Witter* v. *Richards*, 10 Conn. R., 37. *N. L. Bank* v. *Lee*, 11 Conn. R., 112. *Carrington* v. *Holabird*, 19 Conn. R., 84. *West* v. *Howard*, 20 Conn. R., 58.

III. No decree should pass against the railroad com-

pany. They were guilty of no fraud or combination, but paid over the money in good faith. 1. The finding of negligence is not justified by any allegation in the bill. 2. It is negatived by the finding of the court. 3. The facts as found show no negligence. 4. The mistake arose from the acts of Story, as detailed in the report, and their equity is at least equal to his.

STORRS, J. Our view of the facts of this case obviates the necessity of examining many matters of law, which relate to the agreement between the parties, and which, although much discussed, originated solely in different interpretations of the committee's report. If the transactions of the Norwich and Worcester Railroad Company, and the sub-contractor, Cahill, amount to a combination on their part to prevent the execution of an award, founded on a submission to which they, with the plaintiff and others, were parties, it is not denied that a court of equity should interpose to protect the rights, which such a combination is designed to defeat: first, because equity will prevent the consummation of frauds, and secondly, will enforce specific remedies, of which one party, contrary to justice and good conscience, seeks to deprive another. It is on these principles, that we recognize the plaintiff's right to relief.

By an award, confessedly valid, a large sum is adjudged to be due to the plaintiff from the railroad company, who are ordered to pay it, on demand, together with the legal costs of a suit at law, then pending for its recovery. In case of default, the award authorizes the plaintiff to procure the entering up of judgment, in the suit for the debt so ascertained, and for costs. Although an action at law might have been brought upon this award, a more summary and less expensive remedy was provided by the arbitrators, and to the specific execution of this remedy the plaintiff had an incontestable right. It is this right which the railroad company and Cahill conspired to defeat. It is this right, which the plaintiff now

seeks, in a court of equity, to enforce, by soliciting an equivalent remedy.

In the suit just referred to, the plaintiff, instead of being permitted to enter up judgment against the railroad company, was nonsuited, against his will and without his knowledge. This was done through the coöperation of the company and Cahill, the latter claiming to be the assignee of the plaintiff, and assuming to discharge the claim on which the plaintiff's suit was founded. The circumstances, attending the transaction, impress this coöperation with the character of fraud.

An assignment had been executed by the plaintiff to Cahill, of the claim against the company, and an authority to prosecute the suit, already instituted to recover this claim, had been given to the assignee. But this assignment, as appears by the award, was only made to enable Cahill to apply the necessary portion of the avails of the suit to the payment of his own claim against the plaintiff, and to secure priority to Cahill's judgment-lien upon the moneys which were due from the railroad company to the plaintiff, and which had been factorized, not only by Cahill, but by other creditors of the plaintiff. The balance of the debt, due from the company, was expressly agreed to be the plaintiff's property, notwithstanding the assignment, and was consequently awarded to him, in his own right, by the arbitrators. In ascertaining this balance, the arbitrators went behind Cahill's judgment against the plaintiff, which was taken out by agreement for a larger sum than was really due, and also behind the assignment, which was in terms absolute and unlimited. But this was not only in conformity with the real equity of the case, and understanding of the parties, but, in pursuance of an express authority to the arbitrators, to which all the parties to the submission gave oral, or tacit, assent. For the arbitrators, at the close of the hearing, were requested to apportion between Cahill and the plaintiff, according to the real indebtedness of the latter to the former, what should be found

due from the company to the plaintiff. The award was published, and all parties had knowledge of it.

At this stage of the transaction which we are reviewing, Cahill receives, and the company pays, in bonds which commanded in market sixty-seven cents on the dollar, the entire debt of the company to the plaintiff, including the sum expressly awarded to the latter in his own right; Cahill discharging the company from all liability to the plaintiff, and agreeing to indemnify against him, and against any right of his, growing out of the award. These facts sufficiently establish the complicity of both parties to this proceeding, in a purpose to defeat the plaintiff's recovery of the sum awarded to him; both knowing, that the assignment, under which they professed to act, had been determined to be limited in its intent and operation; that Cahill was incompetent to give a valid discharge of the plaintiff's entire demand; that the suit of the plaintiff against the company, had been, by the arbitrators, ordered to be controlled solely by him and for his peculiar benefit, and that any discontinuance of it, except with his concurrence, would be unjust to him and tend to defeat his rights.

Although the committee, in their somewhat vague report, do not expressly find a fraudulent intent to accompany the acts of Cahill and the company, in discharging the plaintiff's claim and procuring the nonsuit, or even the manner in which the nonsuit was obtained, yet they do not exonerate these parties from an inference, which is unavoidably made from the facts disclosed. We have no hesitation in deciding that they prove a case of fraudulent combination, not merely to withhold from the plaintiff, the amount which was awarded to him, but also to deprive him of the cheap and effectual remedy, which was provided for him by the award, for the purpose of insuring the recovery of his claim. We have as little hesitation in deciding, as matter of law, that what amounts to fraud is a legal conclusion, to be derived or inferred by courts from established facts. Fraud, indeed, as known

to equity jurisprudence, " properly includes all acts, omissions and concealments, by which an undue and unconscientious advantage is taken of another." Sto. Eq. Jur., § 187.

Many frauds are properly cognizable by courts of law, and it by no means follows, that the mere existence of fraud in a transaction, will bring it either within the independent or concurrent jurisdiction of courts of chancery. It is also true, that the fact that a wrong complained of is the result of confederacy and combination, will not, in all cases and alone, give jurisdiction of the injury to a court of equity. There must be something special in a case of confederacy, to make it a reliable ground of equity jurisdiction. Sto. Eq. Pl., § 30. But where several individuals have confederated together to perpetrate a fraud, and a court of chancery, by the exercise of its ordinary functions, can protect a party from the consummation of the fraudulent design, this should be a clear case for the interposition of preventive justice.

Moreover, it is well settled, that, if an award provides a party to it with a specific remedy, appropriate to the subject-matter, equity will enforce the specific execution of the award, as readily as it would the performance of an agreement. If the award should merely direct the payment of money, chancery would not be invoked to aid the remedy ; but, if an act is required to be done in specie, the award will be made effectual by a decree. *Hall* v. *Hardy*, 3 P. Williams, 187. It would seem to follow clearly, that where a fraudulent combination exists, for the purpose of rendering a specific remedy, provided by an award, inoperative or impracticable, the case is, in many aspects, a proper subject of equity-jurisdiction.

It only remains to add, that a court of chancery, having once assumed jurisdiction of a matter, will provide the promptest and most effectual remedy which the case requires.

We therefore advise the superior court to order and decree, that the defendants shall pay to the plaintiff the amount

awarded to him, with interest thereon, and one-half of the costs of his suit against the railroad company, as ascertained by the award, and that the defendant, Cahill, shall pay to the plaintiff that part of the residue of such costs, which, by the award, he was directed to pay, and that execution be issued accordingly.

In this opinion the other judges, WAITE and HINMAN, concurred.

Decree accordingly.