MEMPHIS & CHARLESTON R. R. CO. *v.* NARCISSA SCRUGGS.

1. ARBITRATION AND AWARD — EQUITY — JURISDICTION TO ENFORCE IT. — Where parties submit a matter of controversy to the award of arbitrators, a court of equity has no peculiar jurisdiction to enforce the award, if it be for the payment of money only, but the court will interfere in the exercise of its ordinary jurisdiction as applied to the specific performance of agreements; and if the arbitrators, in the proper exercise of the power conferred upon them by the terms of the submission, award a specific performance, a court of equity will enforce such performance, though not made a special rule or order of the court.

2. SAME — SAME — JURISDICTION TO ENFORCE SPECIFIC PERFORMANCE. — A court of equity has jurisdiction to enforce specific execution of an award concerning real estate, or of agreement for the purchase or sale of real estate, notwithstanding it involves the enforcement of an award to pay money. The jurisdiction of the court of equity will not be ousted and the ends of justice defeated, because of an obligation in the award to pay money.

3. SAME — TERMS OF SUBMISSION. — Where, by the terms of the submission, the amount fixed by the award was to be a *lien* on the property, which could be enforced only in a court of equity, by sale under a decree of the chancery court, the *lien* attached upon the making of the award, and furnished an element of equity jurisdiction.

4. SAME — SAME — POWER TO DECIDE QUESTIONS OF LAW AND FACT. — Where the terms of the submission confer upon the arbitrators the power and duty of construing a contract and ascertaining the value of the property to be surrendered by the terms of the said contract, thus involving questions of both law and fact, the arbitrators have the power and the right to decide both. Generally, arbitrators have full power to decide upon questions of law and fact, which arise directly or indirectly, in considering and deciding questions embraced in the submission. When not limited by the terms of the submission, they have the power to decide all questions of law necessary to the decision of the matter submitted, because they are judges of the parties' own choosing. Their decision of matters of law and fact, thus acting within the scope of their authority, their award is conclusive, and is within the principle of *res adjudicata*; it is a *final judgment* for that case and between these parties.

5. SAME — SAME — POWER OF A MARRIED WOMAN TO SUBMIT A CONTROVERSY TO ARBITRATION. — At common law, the sole submission of a *feme covert* was void. By the custom of London, she could become a sole trader and carry on business; she could then submit disputes re-

specting her business to arbitration. But since a married woman cannot convey her real estate without the joinder of her husband in the deed, her sole submission of a dispute, which might result in her being ordered to make a conveyance, would be void; but if she join with her husband in the submission, it would be binding.

6. SAME — SAME — LEASES. — Leases are chattels real, and constitute a very important, and frequently a very valuable species of personal property, and as such, under the control and disposition of married women. By the purchase of a lease from the husband, by the wife, she becomes the owner of the lease, and had the right to convey the same, and hence, a submission of the same to arbitration would be binding on her, notwithstanding her coverture.

7. SAME — SAME — POWER OF THE MEMPHIS AND CHARLESTON R. R. Co. TO SUBMIT A DISPUTE TO ARBITRATION. — The resolution passed on January 25, 187-, by the board of directors, was as follows: "It was resolved, that the president is hereby authorized to receive the hotel at valuation as provided for by said contract." The company being a corporation aggregate, could act only through the instrumentality of an agent or attorney. The resolution conferred power upon the president of the railroad to " agree with the proprietor," and this has been held to authorize an agreement to pay such sum as arbitrators should award. Alexandria Canal Co. v. Swan, 5 Howard (U. S.), 83.

8. SAME — SAME — RATIFICATION OF THE ACTS OF AN AGENT IN SUBMITTING TO ARBITRATION. — Where the agent submitted a controversy to arbitrators, and the principal appeared by their agent and counsel without objection to the reference, it amounts to a ratification of the acts of the agent, in the submission, and estops the principal from making any objection after the award is made, so far as the acts of the agent are legal and valid.

APPEAL from the Chancery Court of Alcorn County. Hon. O. H. WHITFIELD, Chancellor.

The facts in the case fully appear in the opinion of the court.

*Ellett & Phelan,* for appellants :

1. The company is not bound by the contract of submission made by Wicks. He acted under an express authority. Such authority does away with all implied authority. This authority is introduced by the appellee. The authority is this: " Resolved, that the president is authorized to *receive* the hotel at valuation *as*

*provided in the contract;*" this confers no power to make a new contract. The old contract does not give a *lien.* The new contract expressly undertakes to give a *lien* on the property. If Wicks had no authority to make a new contract, it is useless to criticise the *peculiar stipulation* of the contract he did make. In addition to the important violations and variations of the original contract, his agreement that a *lien should exist* upon the property, for valuation of the property, with *power* over the whole property, this was foreign to the original contract, and involves a possible loss of the whole property, by the enforcement of the *lien,* and this *lien* the bill now seeks to enforce. Mr. Wicks under the *express* authority, had no power to enter into a new contract, but simply to act under the *old one.* He *did* make a *new* one, in violation of the old one. This presents a question of agency, and has nothing to do with the form in which a *corporation* may enter into *an arbitration,* viz : by some corporate act, as by a vote or resolution. Watson on Arb., 23 ; 2 Cranch, 127 ; Angel on Corp., §§ 223, 129, 182, and 191.

2. Suppose the contract to be valid, still the bill must be dismissed for this reason. By the stipulation, quit claim deeds were to be executed by *Scruggs and wife.* These stipulations are *concurrent,* if not dependent acts, "at the same time," and in such case the party suing must make his part to be performed *precedent* by *preparing* or by offering to perform it. Unless he does this he cannot sustain his suit. 3 How., 415 ; 13 S. & M., 697 ; 10 S. &. M., 562 ; 2 Parson Con., 532–33 ; 11 Humph., 300. This was not done.

3. *Mutuality* is the first essential to a binding contract of submission. If not *originally* binding on *both parties,* it will not be enforced against either. 17 Eng. C. L. Rep., 468 ; 1 Dallas, 391. Mrs. Scruggs was a married woman and the owner of the property when she entered into the contract. It was not binding on her at. common law. Cited 28 N. Y. Rep., 17 Johns., 548 ; 9 S. and M., 435. The case at bar would not be sustained in the state of New York, as the case itself shows, in consequence of the vast *difference of facts.*

4. Whatever was the *common law* in reference to the power of a married woman to enter into a contract of arbitration, has nothing to do with this case. The property belonged to Mrs. Scruggs, held under the statutes of Mississippi, for the protection of married women, and she could not make a contract to bind her property except in compliance with the law ; this she did not do. Code, p. 335–36, art. 24; p. 313, art. 32; 13 S. & M., 137; 14 S. & M., 120; 41 Miss., 125 ; 44 Miss., 699 ; 2 John's Ch. 363.

5. This is not a case of judgment upon *mere facts.* By the submission the arbitrators were to decide the legal construction of a *written* instrument, being confined to legal evidence, deciding the legal instruction, and they did so, as is apparent on the face of the record, and the award is a nullity.

6. The award is *void* for the reason that the arbitrators did *not* award : 1. That which by the submission, they were required to do. 2. Because they did and would decide what they were *expressly prohibited* from deciding. 3. Because their decision, in regard to the points, expressly reserved, are illegal, wrong and absurd.

· *W. L. Nugent,* on same side, filed an elaborate brief.

*Sale & Dowd,* for appellee :

1. It cannot be contended that the company was not fully advised of the contract made on the 24th of February, 1871, and that it appeared by its fully authorized agents before the arbitrators. It was decided that she was not a tenant at will, and only entitled to value of the buildings, but she had a perpetual lease.

The award gave Mrs. Scruggs $31,666.60, and further that the amount should be a lien on the property until paid, and that she should then give to the company a quit claim deed.

A specific performance *of this award is sought and an enforcement of the lien.*

If Wicks had been a stranger to the company, the resolution would have been ample power. It reads as follows : " A communication from John W. Scruggs in reference to surrendering

the Corinth Hotel to the company *at valuation* according to the terms of the contract of July 7, 1857, was received and read, and on motion it was resolved that the president is hereby authorized to receive the hotel at valuation as provided by said contract, unless before doing so he may deem it advisable to consult with this board."

To comply he must appoint referees, pay the money before he could receive the property. Scruggs had a lien on the hotel; he had built it; if nothing more, he had a mechanic's lien. If he sold it to the company, he had a vendor's lien. Scruggs was not bound to sell on a credit. Wicks was bound to make a contract, naming the referees, defining their power, and arranging for the time and manner of payment. Whenever a duty is imposed on a general or special agent, every power necessary to execute the trust is implied. 21 Pickering, 270–6; U. S. Bank v. Jacobs, 6 Humph., 515; 11 Allen, Mass., 326–31–53; Abbott's Digest, 578. We place the power of Wicks on higher grounds. The charter gives him power to make all contracts. The company is bound by the acts of its general agent, although he has secret instructions limiting his power, unless express notice is given to the other party (and we had no notice of the resolution). Story's Agency, § 73, 74. Even the attorneys of the company had the right to submit to arbitration. 14 Barb., 360; 9 Wheaton, 738; 9 Paige, 498, 496–500; 5 Howard (U. S.), 89; 11 Mass., 448–50; Abbott's Digest Corp., 676; 6 Barb., 579–80–81. The ratification by the company may be implied. The action of the company amounted to a ratification, and binds the corporation. 9 Paige Ch. R. (N. Y.), 496, 498; 12 Allen, Mass. R., 93, 96; Osburn v. U. S. Bank, 9 Wheat., 738; 5 Howard U. S. Rep., 89; 23 ib., 89; 11 Mass., 448.

2. Assuming that the arbitrators had no power to bind Mrs. Scruggs, yet she has absolutely executed her release; the part alleged to be void, is performed. Smith v. Sweeney, 35 N. Y. Rep.; 8 Tiffany, 292–6.

3. The old doctrine in reference to the mutuality of awards, is

overruled by the modern cases. 2 Parsons on contracts, 5 ed., 695 ; Palmer v. Davis, 28 N. Y., 247–9.

4. It is insisted that the arbitrators erred in judgment in the construction of the contract, and the amount awarded, and that the court will set it aside. It being a mixed question of law and fact, the arbitrators could not determine the amount to be paid, without first construing the contract. This issue was fairly submitted to the referees, and decided in favor of the appellee. Whether they erred or not, the award must stand, unless there was fraud, corruption, or misconduct on the part of the arbitrators. Underhill v. Vancourtlandt, 2 Johnson's Ch. R., 340, 361, 370, 358–61, 363. In all cases where a question of law or fact, or both are submitted, the award is conclusive, and will not be set aside for an error of judgment, however much the chancellor may differ with them. He cannot substitute his judgment for theirs. Mickles v. Thayer et al., 14 Allen, 114; 12 East., 357; Cherry v. Cherry, 6 Vesey, 282; 2 Manning & Granger, 847 ; 13 Richardson, S. C. Rep., 9 ; 1 Henning & Munford, 468 ; 22 Eng. C. L. Rep., 603 ; 30 ib., 489 ; 11 Mass., 447 ; 6 Little, p. 1 ; 1 Vesey, Jr., 369 ; 17 Howard (U. S.), 349.

5. The arbitrators decided all that was submitted and nothing more. The parties agreed to surrender the property, and give a quit claim deed. The arbitrators had only to say, what shall be paid, and to arrive at this, had to construe the original contract.

Peyton, C. J., delivered the opinion of the court.

This is an appeal from a decree of the chancery court of Alcorn county, enforcing the specific performance of an award.

The material facts of the case are, that on the 7th day of July, 1857, the Memphis and Charleston Railroad Company, and J. W. Scruggs entered into a contract, by the terms of which said Scruggs was to build a hotel on the grounds of the said company at Corinth now in Alcorn county, to be used as an eating house for said road. The said J. W. Scruggs was to erect the buildings

and make the other improvements at his expense, and pay the said railroad company two hundred and fifty dollars per annum, for the use of the ground occupied by said improvements. He was to keep a first rate eating house, satisfactory to the company, and if the company should become dissatisfied with the character of the house kept, then they were to have the right to pay to the said J. W. Scruggs the value of his improvements at the time, and take possession of the property; and in case said Scruggs should become dissatisfied with the schedule of the road or its management, then he was to have the right to give up the said improvements, and require the said company to pay him their value *at the time of such surrender.* In either case, the property to be valued by disinterested parties. The said Scruggs was to board all the officers and employees of said company at the usual and customary rates charged by other eating houses on said road, and this contract was to be binding on both parties so long as mutually agreeable.

Some time after the making of said contract, the said J. W. Scruggs conveyed his entire interest in said property to his wife, Narcissa Scruggs. It became agreeable to both parties that the said property should be surrendered to the said company, on the payment of the amount due the said Narcissa Scruggs for the value of the said property under the contract. But the parties being unable to agree as to the construction of said contract, and upon the amount of the value of said property to be paid upon the surrender thereof to said company, on the 24th day of February, 1871, the said parties entered into a written agreement to refer the *construction of said contract* and *the amount to be paid for said property* to the said Narcissa Scruggs, upon her surrender of the same to the said company, to the arbitrament and award of R. C. Brinckell, R. O. Reynolds and F. L. Pledge, and the amount so fixed by the award, was, by the terms of the agreement of submission, to be a *lien* on said property.

On the 20th day of April, 1871, the arbitrators met at the

Scrugg's House, in the town of Corinth, and the parties appearing by their counsel, and after hearing the contract and the agreement of submission read and the evidence offered by the parties, and the arguments of counsel, did award, order and decree in writing, that the said railroad company pay to the said Narcissa Scruggs the sum of thirty-one thousand six hundred and sixty-six 66-100 dollars on the surrender of said property.

The appellants make the following assignments of error:

1. The court had no jurisdiction, there being no ground for equitable relief.

2. The award was void, because it went beyond the power of the arbitrators.

3. The submission was void, being by a married woman, and without authority from the appellants.

4. The court below should have dismissed the bill.

With respect to the first assignment of error, involving the question of the jurisdiction of a court of equity to enforce specific performance of awards, it may be observed that the interference of the court in such cases being in exercise not of any jurisdiction peculiar to awards, but of its ordinary jurisdiction as applied to the specific performance of agreements, it follows that many if not all the principles applicable to ordinary suits of that nature must apply. Had this award been for the payment of money only, the remedy would have been full, adequate and complete at law, and a court of equity would have had no jurisdiction to enforce a specific performance of it. There would have been no element of equity in it to authorize the interposition of a court of chancery. In England, the court of equity has in many cases decreed the specific performance of awards, though not made rules or orders of the court for the performance of some specific thing, as to convey an estate, assign securities or the like, but not awards simply to pay money. Fry on Specific Performance of Contracts, 510. And in reference to the specific performance of awards simply to pay money, the general rule of

thisc ountry seems to coincide with that of England. Turpin v. Banton, Hardin, 312; Story v. Norwich & Winchester Railroad Co., 24 Conn., 94, and Bubier v. Babier, 24 Maine, 42. A court of equity has jurisdiction to enforce specific execution of an award concerning real estate or of an agreement for the purchase and sale of real estate, notwithstanding that it involves the enforcement of an award to pay money. It is clearly not the rule to suffer the ends of justice to be defeated, and the jurisdiction of equity to be ousted, because of an obligation in the award to pay money. Fry on Specific Performance, 510, in note (1).

By the terms of the submission the amount fixed by the award was to be a *lien* on the property, which could be enforced only in equity by a sale of the property under a decree of the chancery court. Under the agreement this *lien* attached upon the property upon the making of the award by the said arbitrators, and furnished an element of equitable jurisdiction. And it was agreed by the parties to the submission that the award or "decree, as it is called, of said arbitrators shall be entered as a decree of the chancery court of Alcorn county." This, we think, is substantially a compliance with article 2 of the Code of 1857, page 371, which provides that it shall and may be lawful for all merchants and traders and others desirous to end any controversy by arbitration, to agree that their submission of the matter in controversy to the award or umpirage of any person or persons, should be made a rule of *any court of record* which the parties shall choose, and to insert such, their agreement, in their submission. This was done, and gives the court of chancery, which is here regarded as a court of record, jurisdiction of the case.

The second assignment of errors makes it necessary to inquire whether the arbitrators exceeded their power in making their award, and this involves the question of the power conferred upon them by the agreement of submission. By reference to that instrument, it will be seen that the construction of the agreement or contract and the value of the property to be paid for on

its surrender, were the only questions submitted to the arbitrators for their decision and award.    These were the only questions submitted to them; the first being the construction of the contract, which is matter of law, which is proper for the decision of the court, and the other as to the value of the property to be paid for on its surrender to the railroad company, was a matter of fact, proper to be decided upon the evidence.    The submission clearly shows that the parties could not agree as to the construction of contract, and the value of the property, and hence the submission of these questions to arbitration.

It is objected by counsel for the appellants that the arbitrators were mistaken in point of law in supposing that the lease was a perpetual lease, subject to be defeated by the failure to keep a good eating house, and by a change of schedule even if they were mistaken in the character of the lease, that would not render the award void.    But were they mistaken in the character of the lease?    Taylor in his valuable work on the Law of Landlord and Tenant, when speaking of perpetual leases, says, at page 52 in section 72, "that there may be leases to continue so long as the lessee shall continue to pay the rent and perform the covenants contained in them."    The lease was not a tenancy at will, as supposed by counsel, but one of indefinite duration, determinable upon the happening of either of two future contingencies, to wit, the failure of Scruggs to keep a first rate eating house and pay the rent, or the change of schedule on the part of the railroad company. It could not be terminated at the mere will of either party, but only by mutual agreement, or the happening of one of these events.

It must be conceded that there was considerable diversity of opinion among the witnesses as to the value of the property at the time of the arbitration.    Mr. Sawyer, in his testimony, says:    "I consider the improvements worth, under the restrictions of said contract, in cash in the market, from thirty to thirty-five thousand dollars," and J. W. Scruggs testified that they were worth under

the restrictions of the contract, about forty thousand dollars. In estimating the value of the improvements at the time of the reference and surrender, the arbitrators were evidently not governed by the first cost of the buildings and other improvements, or what it would cost to make them anew; but were probably governed by their increased value after they were made, taking into consideration the use, purposes and business for which they were erected. Be this, however, as it may, they had an undoubted right to construe the contract, and estimate the value of the property at the time, upon the testimony before them, and although they may have erred in either or both of them, we do not feel authorized to declare their award void as an act *ultra vires.*

The ablest discussion of the subject is to be found in the opinion delivered by Chief Justice SHAW, in the famous case of the Boston Water Power Co. v. Gray, 6 Met., 131. Very valuable interests were involved in this litigation. The arguments were made by the foremost counsel in New England, and the elaborate opinion in which this distinguished jurist embodied the results of his careful examination into the subject is probably unsurpassed in this country. The language of the judge is: "In general, arbitrators have full power to decide upon questions of law and fact, which directly or incidentally arise in considering and deciding the questions embraced in the submission. When not limited by the terms of the submission, they have authority to decide questions of law necessary to the decision of the matter submitted, because they are judges of the parties' own choosing. Their decision of matters of fact and law, thus acting within the scope of their authority, is conclusive, upon the same principal that a final judgment of a court of last resort, is conclusive; which is, that the party against whom it is rendered can no longer be heard to question it. It is within the principle of *res judicata;* it is the *final judgment* for that case and between these parties. It is amongst the rudiments of the law, that a party cannot, when judgment is relied on to support or to bar an action, avoid the effect of it by proving, even if

he could prove to perfect demonstration, that there was a mistake of the facts or of the law." When the parties have expressly or by reasonable implication submitted the questions of law as well as the questions of fact, arising out of the matter in controversy, the decision of the arbitrators on both subjects is final. It is upon the principle of *res judicata*, on the ground that the matter has been adjudged by a tribunal which the parties have agreed to make final, and a tribunal of last resort for that controversy; and therefore it would be as contrary to principle for a court of law or equity to rejudge the same question, as for an inferior court to rejudge the decision of a superior, or for one court to overrule the judgment of another, where the law has not given an appellate jurisdiction, or a revising power, acting directly upon the judgment alleged to be erroneous. Morse on Arbitration and Award, 293.

"We take one principle to be very clear," says Chief Justice Parker, "in the case of Jones v. Boston Mill Corporation, 6 Pick., 148, that where it manifestly appears by the submission that the parties intended to leave the whole matter, law and fact, to the decision of arbitrators or referees, the award is conclusive, although they should have mistaken the law, unless the award itself refers such question to the consideration of the court." A mere error in judgment is no mistake which a court of equity can correct, since the judgment of the chancellor is as fallible as that of the arbitrator. Vanderwerker v. Vermont Central Railroad, 27 Vt., 130, and 2 Story's Equity, 721, sec. 1456.

The work last referred to lays down the doctrine, that arbitrators, being the chosen judges of the parties, are, in general, to be deemed judges of the law as well as the facts, applicable to the case submitted to them. If no reservation is made in the submission, the parties are presumed to agree, that every question both as to law and fact, necessary for the decision, is to be included in the arbitration. Sec. 1454.

The third assignment calls in question the power of a married

woman to submit to arbitration. By the general rule of the common law, the sole submission of a *feme covert* is void. For her husband was entitled to her chattels, real and personal, and to her *choses in action.* Nor could she alien her real estate by her own sole deed. By the custom of London, a *feme covert* may carry on buisness as a sole trader, and "it is apprehended," says Russell on Arbitration, 16, that "she might refer disputes respecting her business to arbitration." But even at common law, a married woman could submit concerning her separate property over which she may have the power of disposition as a *feme sole.* Under the statutory liberality of modern times, there is no good reason to doubt that the enactments in the various states, going the length of giving to a married woman the sole ownership, control and power of conveyance in respect of her personality, and often the power to conduct business on her own sole and separate behoof, would be construed as by necessary implication, giving her the appurtenant power to enter into a submission in relation to such personality or business. But since a wife cannot convey her real estate without the joinder of her husband in the deed, her sole submission of a dispute which might result in her being ordered to make a conveyance, would properly be held void on the general principle that her power was not coextensive with her undertaking. But if she join with her husband in a submission of this description, the agreement will be binding.

But even in England and under the ancient doctrine of the common law, some exceptions were allowed to establish themselves. Thus where parties had knowingly and voluntary entered into submission with a married women, if the award were in her favor they were held bound by it. Russell on Arb., 17 ; *in re* Warner, 2 Dowling & Lowndes, 148, and Palmer v. Davis, 28 New York, 242. See on this subject, Emery v. Wase, 5 Vesey, Jr., 846, and Weston v. Stuart, 2 Fairfield, 326.

Leases are chattels real, and constitute a very important, and frequently, a very valuable species of personal property, and as

such under the control and disposition of married women. By the conveyance from Scruggs to his wife, she became the owner of the lease, as well as of the improvements, and had a right to dispose of it as her personal property, and therefore a submission of the same to arbitration would be binding on her, notwithstanding her coverture. The view we have taken of the three first assignments of errors, it will be perceived, fully disposes of the fourth.

It is contended by counsel for appellants that M. J. Wicks, the president of the Memphis and Charleston Railroad Company, had no authority to enter into the submission on behalf of said company. We think the resolution passed by the board of directors of the company on the 25th day of January, 1871, conferred the authority upon the president to submit to arbitration as a mode of ascertaining the value of the property by disinterested parties, as provided in the original contract. On that day the minutes of the board of directors show "it was resolved that the president is hereby authorized to receive the hotel at valuation as provided for by said contract." The appellants being a corporation aggregate, a mere artificial being, could act only through the instrumentality of an agent or attorney. A power to " agree with the proprietor " of land for the purchase was held to authorize an agreement to pay such sum as arbitrators should award. Alexandria Canal Company v. Swan, 5 How. (U. S.), 83. So we think the authority conferred by the board of directors upon the president to receive the hotel at the valuation of disinterested parties, clothed him with the power to refer to arbitration. And the appearance of the appellees before the arbitrators, by their agents and counsel without objection to the reference, amounts to a ratification of the act of the agent, and estops them from making any objection to the submission after the award was made. Where the principal, upon a full knowledge of all the circumstances of the case, deliberately ratifies the acts, doings or omissions of his agent, he will be bound thereby as fully, to all intents

and purposes, as if he had originally given him direct authority in the premises, to the extent which such acts, doings or omissions reach. Story on Agency, 283, sec. 239.

At common law, however, there is a distinction between the ratification of acts which are void and the ratification of those which are voidable. In the former case, the ratification is inoperative for any purpose whatever; in the latter, full validity is given to the acts. Acts which are illegal, immoral or against public policy fall within the former class. For, in such cases, the original contracts or acts being void, ought not to be allowed to acquire any validity from their being subsequently confirmed; since the same noxious qualities adhere to the ratification as existed in the original transaction. But whatever may be the force of this distinction in the former class of cases, properly understood, it is not applicable to cases of agency, where a party assumes to act, not for himself but for another, without any authority whatsoever, or by an excess of the authority delegated to him, in cases where the principal may lawfully do the act. In all such case, if the principal subsequently ratifies the act, he is bound by it, whether it be for his detriment or for his advantage. And a ratification once deliberately made, with full knowledge of all the material circumstances, cannot be recalled. Story on Agency, sec. 242.

As the corporation may lawfully be a party to a submission to arbitration, and as this can be effected only through an agent, it follows that the submission of the agent, although it may be in excess of authority, may be ratified by the corporation, as well by its acts as by express confirmation. And this we think was done by its appearance before the arbitrators by its agent and attorney, without objection to the authority of the arbitrators. This conduct and act on the part of the railroad company was a recognition of the authority of the arbitrators, and amounted to a ratification thereof.

Even had this been the verdict of a jury, there is evidence to sustain it, and this court would be very reluctant to disturb it.

But, as a decision of the questions referred by judges of the parties' own selection, in the absence of fraud, corruption, partiality or undue means employed in procuring the award, we do not feel authorized to disturb it.

In reference to the questions submitted, the language of the agreement of submission is as follows: "It is distinctly agreed that only the questions of the legal construction of said agreement as to the value of said improvements, and the amount which shall be paid, are submitted to said arbitrators, and all other questions arising under said agreement, whether as to the right of the parties to recover damages or otherwise, are hereby expressly reserved." From this, it will appear, as before stated, that there were only two questions referred : one a question of law involving the construction of the contract; and the other a question of fact, depending for its solution upon the evidence adduced.

Questions of pure law are sometimes directly submitted, as we think was done in this case in reference to the construction of the contract. In such cases, it makes no difference whether or not the arbitrators decide them as the court would see fit to do. The award, whether it meets the view of the court or not, is final and conclusive. The agreement of the parties is, substantially, that they will be bound by whatever the arbitrators declare to be the law between them, and by this agreement they are bound. Morse on Arbitration and Award, 314 and 315.

As matters of fact are peculiarly within the arbitrators' authority, less hesitation has been manifested in treating as conclusive the finding of arbitrators upon facts, than their rulings upon principles of law. The absence of technicality leaves no room for questioning the accuracy of their knowledge. As intelligent men, they judge of the facts and merits finally, as a jury does. The department is peculiarly their own. That their discretion and judgment upon all questions of fact or merits are absolutely final, and not subject to review or examination, is a leading principle often enunciated, and nearly, though not quite, universally ac-

---

Syllabus.

---

cepted in the law concerning arbitration. Chief Justice Shaw in the case before cited of Boston Water Power Company v. Gray, says: "It has long since been settled that awards are conclusive on all matters of fact submitted to the arbitrators." Morse on Arb., 316.

Upon the whole, we can perceive no error in the decree of the court below, and the same must therefore be affirmed.

The decree is affirmed.