Argued March 3, affirmed April 4, 1972

WILSON, *Respondent, v.* ZIMMERMAN,
*Defendant,* and SOUNDARAMA MARKETING
CO., *Appellant.*

495 P2d 713

*Ralph T. Aldave,* Eugene, argued the cause and submitted a brief for appellant.

*A. J. Morris,* Eugene, argued the cause for respondent. With him on the brief were Bailey, Morris & Van Rysselberghe, Eugene.

Before O'CONNELL, Chief Justice, and McALLISTER, DENECKE, HOLMAN, TONGUE and BRYSON, Justices.

O'CONNELL, C. J.

This is a suit to rescind a "Dealer Agreement" between defendant, Soundarama Marketing Co., and plaintiff, Terry Wilson, and for the return of $12,000 paid by plaintiff for a franchise from Soundarama. The court entered a judgment in favor of plaintiff and against Soundarama Marketing Co. The court found in favor of defendant Zimmerman. Defendant Soundarama appeals.

■ Plaintiff's suit for rescission is based upon certain alleged false representations made by defendants which induced plaintiff to purchase a franchise from Soundarama entitling plaintiff to sell certain stereophonic sound equipment.[1]

---

[1] Although it is alleged that defendants knew that these representations were false when made, plaintiff is entitled to rescission even though there was no scienter if the representations were material.

■ There is testimony which, if believed, would establish that Zimmerman, who was a franchised dealer in Portland and who acted as Soundarama's agent in selling the franchise to plaintiff, represented that he made a monthly net profit of $6,000 from his stereophonic business in Portland. Zimmerman testified that when he was asked by plaintiff what his monthly earnings were, he answered that they averaged between four and five thousand per month. However, in testifying he explained that he understood this to be an inquiry as to his total earnings, both from his dealership in Portland and from the sale of franchises. Plaintiff, however, testified as follows:

"Q. Was there any indication that this * * * maybe a portion of this was for the sale of franchises?

"A. If I remember correctly, I asked him if it was from his business in Portland, and I believe he indicated that it was."

Plaintiff's wife, who was present at the time the alleged representations were made, also testified that Zimmerman represented that he was earning about $6,000 a month and that she got the impression from Zimmerman's statement that the earnings were "from his sales of the sets in and around the Portland area." Plaintiff also alleges that Zimmerman falsely represented that the stereophonic equipment was approved by Underwriters Laboratory and that it was lawful to sell the equipment in Oregon. ORS 479.760 makes it unlawful to sell an uncertified electrical product.② The

---

② ORS 479.760 provides, in part:

"(1) Except as provided in ORS 479.540 and 479.720:

"(a) No person shall sell, offer for sale or dispose of by gift or otherwise any uncertified electrical product.

stereos were not certified and as a consequence plaintiff was denied a city license to sell them.

Plaintiff notified Soundarama of this fact. Soundarama's president, Bud Turk, responded indicating that he had been unaware of the Oregon requirement and advised plaintiff that Soundarama would cooperate in making the application for certification. Plaintiff answered through his attorney, informing Soundarama that if certification was not obtained by it within two weeks plaintiff would seek rescission of the contract. Soundarama took no further action and about three weeks later plaintiff notified Zimmerman of plaintiff's election to rescind and thereafter filed the present suit.

Plaintiff's wife, who was acting in concert with her husband in deciding whether to purchase the franchise, testified that she asked if there was "any kind of ULA approval, or anything," and that Zimmerman looked the set over and said, " 'Yes, it is' " and he looked it all over and said, " 'Well, this is a set from

---

"(b) No electrical product shall be certified unless it meets minimum safety standards.

"(2) Any person may apply to the Labor Commissioner to have an electrical product certified:

"(a) By submitting a specimen, sample or prototype to the Labor Commissioner for testing within a reasonable time before the date on which certification will be required, together with a fee set by the Labor Commissioner sufficient to defray the cost of shipment and testing. Not later than six months after receipt of a specimen, prototype or sample the Labor Commissioner shall complete the required testing and give his decision certifying or rejecting the product, or

"(b) By submitting satisfactory proof to the Labor Commissioner that a specimen, sample or prototype of the product requested to be certified has been inspected by an approved testing laboratory using the same standard used by the Labor Commissioner and has been found to be safe."

home. I believe it has probably come off.'" Mrs. Wilson testified that the UL approval was an important consideration in the decision to purchase the franchise because "the women's magazines had harped all through Christmas on this and I thought that was a good selling point for us on this."

Plaintiff also charged defendants with making false representations relating to other aspects of the sale of the franchise. It is not necessary to discuss these allegations because we are of the opinion that the misrepresentations discussed above are sufficient to constitute the basis for a rescission of the franchise contract.

Defendant contends that Zimmerman's representation as to the amount he earned is "completely unrelated to the contract between the parties" because "the representation could not reasonably have been considered as an indication of the potential for the Eugene dealership." We disagree. Although admittedly there are differences between the two areas which could result in a difference in sales and earnings, the success of Zimmerman's business in Portland could well indicate to a prospective purchaser of a franchise elsewhere that there was a market for the product and that a dealer in Soundarama equipment could operate at a profit. We regard the representation as relevant and material.

■ There was evidence to establish that Zimmerman represented the equipment to be certified. This representation was certainly material because without it the product could not be sold in Oregon. Defendant argues that plaintiff did not act in fairness and in good faith when he demanded Soundarama to obtain certification within two weeks and by refusing to apply

for certification himself. This contention would have some merit if there had been no misrepresentation as to the certification. But assuming, as we do, that Zimmerman induced plaintiff to purchase by representing that the equipment was certified, plaintiff should not have to take upon himself the burden of fulfilling the conditions of the bargain assumed by defendant. Under the statute the certifying authorities had up to six months to complete the testing and to give a decision certifying or rejecting the product. Although one witness testified that the certification process could vary from three weeks to six months, plaintiff would have no way of knowing how long he would have to postpone the operation of his business awaiting certification. We do not think it was unreasonable for plaintiff to insist that defendant do what Zimmerman represented had already been done.

The decree and judgment of the trial court is affirmed.