YEONG GIL KIM ET AL. *v.* DOMINICK
MAGNOTTA ET AL.
(AC 16509)

Lavery, Hennessy and Daly, Js.

Argued December 12, 1997—officially released June 23, 1998

*Edward T. Krumeich*, for the appellants-appellees (plaintiffs).

*Howard I. Gemeiner*, for the appellee-appellant (named defendant).

*Opinion*

HENNESSY, J. The plaintiffs, Yeong Gil Kim and Hi-Soon Seo Kim, appeal from the trial court's denial of their motion for rescission of the underlying stipulated

judgment. The named defendant, Dominick Magnotta,[1] cross appeals from the denial of his motion for a directed verdict and his motion to set aside the jury verdict of a violation of the Connecticut Unfair Trade Practices Act (CUTPA), General Statutes § 42-110a et seq.[2] We affirm the judgment of the trial court.

On December 5, 1989, the plaintiffs purchased a car wash business from Raindance, Inc., a corporation owned and controlled by the defendant, for a purchase price of $903,000.[3] In addition, the plaintiffs entered into a twenty-five year lease of the premises, fixtures and personalty located at 938 West Main Street, Branford, with a monthly rental payment of $3000.

The plaintiffs operated the Branford car wash for the next eighteen months, during which time they fell into arrears on both the rent and note payments. The defendant subsequently brought a summary process action against the plaintiffs. The plaintiffs stipulated to the entry of judgment against them in the amount of $436,743.49 owed under the note, $294.10 in costs, $11,854.69 in rental payments owed and the voluntary surrender of possession of the Branford car wash to the defendant.

On December 4, 1992, the plaintiffs filed a complaint against the defendant for fraud, theft[4] and violation of CUTPA. The complaint alleged that the plaintiffs were

---

[1] We refer in this opinion to the named defendant as the defendant.

[2] General Statutes § 42-110b (a) provides: "No person shall engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce."

[3] The total purchase price of $903,000 consisted of a $3000 security deposit, a $90,000 payment made upon signing of the purchase agreement, $360,000 paid at the closing and a $450,000 promissory note secured by a chattel mortgage and payable over ten years at a rate of 10 percent interest per year with successive monthly payments of $5946.80.

[4] General Statutes § 52-564 provides: "Any person who steals any property of another, or knowingly receives and conceals stolen property, shall pay the owner treble his damages."

induced into purchasing the car wash by the fraudulent misrepresentations of the defendant as to the volume of cars serviced, operating expenses, and past and future gross earnings. In addition, the plaintiffs claim that while the summary process action was pending, the defendant offered to settle if the plaintiffs voluntarily surrendered possession of the Branford car wash and stipulated to the entry of judgment for the full amount due under the note. In exchange, the defendant would forgive all debts relating to the Branford car wash, including the release of the stipulated judgment, pay the attorney's fees the plaintiffs incurred in connection with the summary process action and transfer title to another car wash located in Hamden to the plaintiffs. The plaintiffs agreed and a stipulated judgment was entered. The plaintiffs claim that the defendant failed to forgive all debts owed, to pay all attorney's fees and to transfer title to the Hamden car wash.

The case was bifurcated at trial, with the jury deciding the issue of liability on all counts and the trial court deciding the remedy should the plaintiffs prevail. On August 25, 1995, the jury returned a verdict in favor of the defendant on the counts of fraud and theft, and in favor of the plaintiffs on the count of a violation of CUTPA. The defendant cross appeals from the denial of his motion for a directed verdict and his motion to set aside the verdict in connection with the CUTPA claim.

The trial court then considered the issue of relief. The plaintiffs requested restitution, rescission of the stipulated judgment, punitive damages and attorney's fees. The court found that restitution was the proper remedy and rendered judgment in the amount of $483,000.[5] The court declined to rescind the stipulated

[5] The award of $483,000 consisted of the return of the $453,000 paid as part of the purchase price and a $30,000 loan the plaintiffs had obtained because of cash flow problems caused by the car wash purchase. The court also awarded $80,000 to the plaintiffs in attorney's fees.

judgment, reasoning that the four month limitation provided in General Statutes § 52-212a[6] and Practice Book § 326[7] operated as a bar, absent a showing of fraud, duress, accident or mistake. The jury declined to find fraud, and the court found no duress, accident or mistake. The plaintiffs appeal from the denial of their request for rescission.

## I

The plaintiffs claim that the trial court improperly denied their request for rescission of the stipulated judgment. They claim that the court had jurisdiction to rescind the stipulated judgment and that rescission was an appropriate equitable remedy for a CUTPA violation. We disagree.

"A stipulated judgment is not a judicial determination of any litigated right. *New York Cent. & H. R. R. Co.* v. *T. Stuart & Son Co.*, 260 Mass. 242, 248, 157 N.E. 540 [1927]; *Dulles* v. *Dulles*, 369 Pa. 101, 107, 85 A.2d 134 [1952]. It may be defined as a contract of the parties acknowledged in open court and ordered to be recorded by a court of competent jurisdiction. *Owsiejko* v. *American Hardware Corporation*, 137 Conn. 185, 187, 75 A.2d 404 [1950]; *Risk* v. *Director*, 141 Neb. 488, 496, 3 N.W.2d 922 [1942]. [It is] the result of a contract and its embodiment in a form which places it and the matters covered by it beyond further controversy. 3 Freeman,

---

[6] General Statutes § 52-212a provides in relevant part: "Unless otherwise provided by law and except in such cases in which the court has continuing jurisdiction, a civil judgment or decree rendered in the Superior Court may not be opened or set aside unless a motion to open or set aside is filed within four months following the date on which it was rendered or passed. . . ."

[7] Practice Book § 326 (a), now Practice Book (1998 Rev.) § 17-4 (a), provides : "Unless otherwise provided by law and except in such cases in which the court has continuing jurisdiction, any civil judgment or decree rendered in the superior court may not be opened or set aside unless a motion to open or set aside is filed within four months succeeding the date on which notice was sent. The parties may waive the provisions of this paragraph or otherwise submit to the jurisdiction of the court."

Judgments (5th Ed.) p. 2774. The essence of the judgment is that the parties to the litigation have voluntarily entered into an agreement setting their dispute or disputes at rest and that, upon this agreement, the court has entered judgment conforming to the terms of the agreement. *Harter* v. *King County*, 11 Wash. 2d 583, 591, 119 P.2d 919 [1941]." (Internal quotation marks omitted.) *Gillis* v. *Gillis*, 214 Conn. 336, 339–40, 572 A.2d 323 (1990).

General Statutes § 52-212a provides that "[u]nless otherwise provided by law and except in such cases in which the court has continuing jurisdiction, a civil judgment or decree rendered in the Superior Court may not be opened or set aside unless a motion to open or set aside is filed within four months following the date on which it was rendered or passed. . . ." Practice Book § 326, now Practice Book (1998 Rev.) § 17-4, is essentially the same as § 52-212a. See footnote 6. It is well recognized that a failure to file a motion to open a judgment within four months deprives the trial court of jurisdiction to open the judgment. See *Connecticut Pharmaceutical Assn., Inc.* v. *Milano*, 191 Conn. 555, 558, 468 A.2d 1230 (1983); *Celanese Fiber* v. *Pic Yarns, Inc.*, 184 Conn. 461, 465, 440 A.2d 159 (1981). "In *Celanese Fiber,* our Supreme Court held that a trial court lacked jurisdiction to open the judgment unless the otherwise provided by law exception applies. *Celanese Fiber* v. *Pic Yarns, Inc.*, supra, 465. Unless the parties waive this time limitation, the trial court lacks jurisdiction to entertain a motion to open filed more than four months after a decision is rendered. *Van Mecklenburg* v. *Pan American World Airways, Inc.*, 196 Conn. 517, 518, 494 A.2d 549 (1985); *Gallagher* v. *Gallagher*, 29 Conn. App. 482, 483, 616 A.2d 281 (1992)." (Internal quotation marks omitted.) *Citicorp Mortgage, Inc.* v. *Tarro*, 37 Conn. App. 56, 59, 654 A.2d 1238 (1995).

"There are few exceptions to the general rule. The court does have jurisdiction to open a stipulated judgment, on a motion, even after the four month period has elapsed if the movant can show that the judgment was obtained by fraud, duress, accident or mistake. *Solomon* v. *Keiser*, 22 Conn. App. 424, [427] 577 A.2d 1103 (1990). Accordingly, Practice Book § 326 does not prevent the later reopening of a judgment obtained by fraud, by mutual mistake or by actual absence of consent. *Kenworthy* v. *Kenworthy*, 180 Conn. 129, 131, 429 A.2d 837 (1980)." *Citicorp Mortgage, Inc.* v. *Tarro*, supra, 37 Conn. App. 59.

In the present case, the plaintiffs failed to file a motion to open the stipulated judgment and to request rescission within four months of the entry of judgment. In the absence of fraud, mistake, duress or accident,[8] the trial court was without jurisdiction to order rescission of the stipulated judgment.

The plaintiffs raise three arguments to support their claim that the trial court had jurisdiction to rescind the stipulated judgment. Each is without merit. First, the plaintiffs assert that § 52-212a and Practice Book § 326 do not apply to their request for rescission of the stipulated judgment because they did not make the request through a motion to open or set aside the judgment. The plaintiffs misconstrue the language of those two sections. Contrary to the plaintiffs' assertions, Practice Book § 326 and § 52-212a do not merely concern time limitations on a motion to open or set aside a judgment, but concern the judgment itself. They provide that a civil judgment or decree rendered in the Superior Court *"may not be opened or set aside"* (emphasis added) whether through a motion to open or set aside the verdict or

---

[8] The jury found in favor of the defendant on the claim of fraud. The plaintiffs did not claim and the trial court did not find duress, mutual mistake or actual absence of consent.

through a request for rescission unless the request is
made within four months of entry of judgment.

The plaintiffs next assert that the court had indepen-
dent jurisdiction to open the judgment because they
brought a separate action seeking rescission of the judg-
ment. Absent waiver, consent or other submission to
jurisdiction, the trial court lacked personal jurisdiction
over the defendant after the expiration of the four
month period provided in Practice Book § 326 and § 52-
212a. See *O'Leary* v. *Industrial Park Corp.*, 211 Conn.
648, 652–53 n.2, 560 A.2d 968 (1989). This court knows of
no authority for the assertion that personal jurisdiction
over a defendant in one case confers personal jurisdic-
tion over the defendant in a separate case. It is clear
that the plaintiffs cannot confer personal jurisdiction
over the defendant, with regard to the stipulated judg-
ment, merely by filing a separate civil action.

The plaintiffs finally claim that the "otherwise pro-
vided by law" exception in the statute and rule of prac-
tice applies, and that the court was not bound by the
four month limitation. "A trial court has only limited
authority to modify its judgments. Practice Book § 326
provides in part that '[u]nless otherwise provided by
law and except in such cases in which the court has
continuing jurisdiction, any civil judgment or decree
rendered in the superior court may not be opened or
set aside unless a motion to open or set aside is filed
within four months succeeding the date on which it
was rendered or passed.' . . . See General Statutes
§ 52-212a.

"Contrary to the plaintiffs' assertion, the trial court's
authority was not 'otherwise provided by law.' This is
not a case in which the legislature has provided the
trial court with the statutory authority to modify its
previous judgment even after the four month period
provided for in Practice Book § 326. See, e.g., General

Statutes § 46b-86 (the modification of alimony or support orders and judgments can be made 'at any time'). Nor is this a situation in which the common law has provided the trial court with continuing jurisdiction. See, e.g., *Adams* v. *Vaill,* 158 Conn. 478, 482, 262 A.2d 169 (1969) ('[i]t cannot be doubted that courts have inherent power to change or modify their own injunctions where circumstances or pertinent law have so changed as to make it equitable to do so')." *O'Leary* v. *Industrial Park Corp.,* supra, 211 Conn. 652–53 n.2.

## II

The defendant cross appeals from the denial of his motion for a directed verdict and his motion to set aside the jury's verdict of a violation of CUTPA. We affirm the judgment of the trial court.

## A

The defendant claims that the plaintiffs failed to present any evidence of damages necessary to support restitution.[9] We disagree.

General Statutes § 42-110g (a) provides in relevant part: "Any person who suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment of a method, act or practice prohibited by section 42-110b, may bring an action . . . to recover actual damages. . . . The court may, in its discretion, award punitive damages and may provide such equitable relief as it deems necessary or proper. . . ."

"While CUTPA damages need not be proven with absolute precision, the failure to present any evidence

---

[9] The defendant also claims that the plaintiffs failed to present evidence of damages necessary for their claims of unjust enrichment and rescission. The defendant is not aggrieved and has no standing to raise those claims because the trial court found for the defendant on the claim of unjust enrichment and denied rescission of the stipulated judgment. See *Horton* v. *Hydra Systems International, Inc.,* 16 Conn. App. 420, 425, 547 A.2d 926 (1988). We decline to review these claims.

concerning the nature and extent of the injury sustained precludes recovery under the statute." *A. Secondino & Son, Inc.* v. *LoRicco*, 215 Conn. 336, 344, 576 A.2d 464 (1990). "We have stated that [t]he ascertainable loss requirement is a threshold barrier which limits the class of persons who may bring a CUTPA action seeking either actual damages or equitable relief. *Hinchliffe* v. *American Motors Corp.*, 184 Conn. 607, 615, 440 A.2d 810 (1981). An ascertainable loss is a deprivation, detriment [or] injury that is capable of being discovered, observed or established. . . . Id., 613. [A] loss is ascertainable if it is measurable even though the precise amount of the loss is not known. . . . Under CUTPA, there is no need to allege or prove the amount of the ascertainable loss. Id., 614. A plaintiff need not prove a specific amount of actual damages in order to make out a prima facie case [under CUTPA]. Id., 612–13." (Internal quotation marks omitted.) *Service Road Corp.* v. *Quinn*, 241 Conn. 630, 638–39, 698 A.2d 258 (1997).

When a court grants the remedy of restitution, the defendant "is required to account for a benefit that has been conferred on him by the injured party. . . . In contrast to cases in which the court grants specific performance or awards damages as a remedy for breach, the effort is . . . to prevent unjust enrichment of the [defendant] . . . by protecting the injured party's restitution interest. . . . E. A. Farnsworth, Contracts (1982) § 12.19, p. 905; 1 G. Palmer, The Law of Restitution (1978) § 4.1, p. 369; 3 Restatement (Second), Contracts §§ 344 (c) and 370 (1981); and see *Monarch Accounting Supplies, Inc.* v. *Prezioso*, 170 Conn. 659, 665–67, 368 A.2d 6 (1976); *Franks* v. *Lockwood*, 146 Conn. 273, 278, 150 A.2d 215 (1959). When an injured party seeks an award of money to protect his restitutionary interest, any award may as justice requires be measured by either (a) the reasonable value to the other party of what he received . . . or (b) the extent to

which the other party's property has been increased in value or his other interests advanced. 3 Restatement (Second), [supra, § 371]." (Internal quotation marks omitted.) *Bernstein* v. *Nemeyer*, 213 Conn. 665, 673–74, 570 A.2d 164 (1990).

In the present case, the trial court clearly had sufficient evidence to determine "(a) the reasonable value to the other party of what he received . . . or (b) the extent to which the other party's property has been increased in value or his other interests advanced." 3 Restatement (Second), supra, § 371, p. 202. The court awarded $483,000 to the plaintiffs, which consisted of the return of the $453,000 paid as part of the purchase price and a $30,000 loan the plaintiffs had obtained because of cash flow problems caused by the car wash purchase. The defendant's claim is without merit.

B

The defendant next asserts that the CUTPA claim could not be based on misrepresentations made by the defendant because the contract contained a specific disclaimer of any such representations. In addition, the defendant claims that the parol evidence rule barred the introduction of testimony regarding alleged misrepresentations as being in contravention of the express contractual provisions. We are unpersuaded.

We decline to review the defendant's first argument regarding the specific disclaimer because it was not raised in the trial court in the defendant's motion for a directed verdict. "The court shall not be bound to consider a claim unless it was distinctly raised at the trial or arose subsequent to trial. . . ." Practice Book § 4061, now Practice Book (1998 Rev.) § 60-5. Accordingly, we decline to consider this claim raised for the first time on appeal.

Certain additional facts are necessary to our resolution of the defendant's second claim. The purchase contract provided in relevant part that "[t]he Buyer hereby further represents that no representations of any kind whatsoever [have] been made to him by the Seller or any representative or agent of the Seller as to the income of the car wash business conducted by Raindance, Inc.; nor has the Seller or [the defendant] made any other warranties, promises, covenants or representations of any kind whatsoever to the Buyer, without limitation, except as may be specifically set forth herein." The defendant claims that any evidence of misrepresentation should not have been admitted or relied on by the court because its admission was precluded by the parol evidence rule.

"The parol evidence rule prohibits the use of extrinsic evidence to vary or contradict the terms of an integrated written contract. *Giorgio* v. *Nukem, Inc.*, 31 Conn. App. 169, 173–74, 624 A.2d 896 (1993); see also 2 Restatement (Second), [supra, § 213]." (Internal quotation marks omitted.) *Foley* v. *Huntington Co.*, 42 Conn. App. 712, 733, 682 A.2d 1026, cert. denied, 239 Conn. 931, 683 A.2d 397 (1996). "The defendant seems to claim that a party to a contract may, without liability, make such misrepresentations of fact as he chooses, provided the contract is afterwards reduced to writing and the misrepresentations are not included therein. This indicates a misconception of the parol evidence rule. The [plaintiffs are] not seeking to add to, subtract from, or alter, the terms of the written contract itself. *Cohn* v. *Dunn*, 111 Conn. 342, 345, 149 A. 851 [1930]; *Nagel* v. *Modern Investment Corporation*, 132 Conn. 698, 700, 46 A.2d 605 [1946]. [They are] claiming that [they were] induced to enter into the contract by misrepresentations of material facts. This action [was] concerned . . . with material misrepresentation in the inducement of the contract. Parol evidence is ordinarily admissible to

prove such misrepresentation. *McLaughlin* v. *Thomas*, 86 Conn. 252, 256, 85 A. 370 [1912]; *Kiss* v. *Kahm*, 132 Conn. 593, 595, 46 A.2d 337 [1946]." *Presta* v. *Monnier*, 145 Conn. 694, 700, 146 A.2d 404 (1958). "Since the evidence in question was offered to prove such misrepresentations, it was properly admissible notwithstanding the objection of the defendants that it tended to change the terms of a written agreement." *Paiva* v. *Vanech Heights Construction Co.*, 159 Conn. 512, 521, 271 A.2d 69 (1970).

The judgment is affirmed.

In this opinion DALY, J., concurred.

LAVERY, J., dissenting. I concur with part II of the majority opinion affirming the trial court's judgment on the named defendant's cross appeal. Because the facts of this case reveal manifest injustice and represent the very essence of what the Connecticut Unfair Trade Practices Act (CUTPA), General Statutes § 42-110a et seq., was intended to redress, I respectfully dissent from part I of the majority opinion.

The jury found that the plaintiffs proved each material element of their claim that the defendant's actions violated CUTPA. Because the interrogatories submitted to the jury were general in nature, I will "presume that the jury found every issue in favor of the prevailing party." *Finley* v. *Aetna Life & Casualty Co.*, 202 Conn. 190, 202, 520 A.2d 208 (1987). That is, the jury found that not only did the defendant's actions regarding the sale of the Branford car wash violate CUTPA, but also that his actions with respect to the stipulated judgment were in violation of CUTPA.

More specifically, the jury reasonably could have found that on December 5, 1989, the plaintiffs purchased a car wash business located in Branford from

the defendant for $903,000.[1] The plaintiffs were required to pay the defendant $453,000 prior to or at the closing and to sign a $450,000 promissory note payable to the defendant. The car wash was located on property owned by the defendant, and the plaintiffs were required to enter into a twenty-five year lease of the property. The defendant also had a security interest in the various assets and equipment of the car wash. The purchase agreement, promissory note, lease and security agreement all contained cross default provisions.

The defendant made numerous representations with respect to the car wash as to the number of cars serviced per year, the gross annual income from the business and its profitability. The defendant knew that the representations were false and that the immigrant plaintiffs had no prior experience in the car wash business. The plaintiffs asked to see books and records of the car wash, but the defendant told them there were no such records because the car wash was a "cash business."

After three months of operation, the plaintiffs reported to the defendant that the volume of business was much smaller than he had represented and generated too little income to pay the rent and promissory note installments. The defendant told the plaintiffs not to worry about the mortgage payments, and blamed the low volume of business on the weather and business conditions in general. When the plaintiffs fell behind on the rent and note, they demanded their money back. Because the defendant threatened them with eviction, which would trigger all of the cross defaults, the plaintiffs refinanced their home for $30,000 to pay the arrearage. The car wash continued to lose money. The plaintiffs once more fell behind in their payments and told the defendant they could no longer subsidize the

---

[1] The Branford car wash business was actually purchased from Raindance, Inc., a corporation owned and controlled by the defendant.

car wash losses. The defendant then commenced a summary process action against the plaintiffs to evict them from the premises and for judgment on the promissory note.

While the summary process action was pending, the defendant offered to settle the suit. The defendant dictated the terms of the settlement. The plaintiffs were to return the car wash and to permit a stipulated judgment on the promissory note to enter against them. In return, the defendant promised to forgive the plaintiffs' debts on the car wash, pay the plaintiffs' attorney's fees and transfer to the plaintiffs a car wash business he owned in Hamden. The defendant made numerous representations to the plaintiffs with respect to the profitability of the Hamden car wash. The defendant, however, insisted that, for "tax purposes," no mention of the transfer of the Hamden car wash could be made as part of the stipulated judgment. The attorney's fees and forgiveness of debt were also not incorporated in the stipulated judgment.

Before the plaintiffs signed the settlement agreement, the defendant represented to them that he had signed the papers necessary to transfer the Hamden car wash and to release them from all liability and claims. The plaintiffs and the defendant agreed to transfer the car wash businesses simultaneously. The plaintiffs and the defendant agreed that the stipulated judgment would neither be filed nor take effect until the defendant transferred the Hamden car wash and signed the release.

The defendant not only failed to transfer the Hamden car wash to the plaintiffs, but also failed to release the plaintiffs and caused the stipulated judgment to enter on July 29, 1991. After the defendant locked the plaintiffs out of the Branford car wash, he operated it and the Hamden car wash until he filed a petition in bankruptcy with respect to the Hamden car wash on November 15,

1991. He also did not pay the plaintiffs' attorney's fees as promised.

The following procedural facts are also relevant. Paragraph forty-one of the fourth count of the complaint alleges that the "[d]efendants'[2] conduct described above constituted unfair and deceptive acts and practices in the conduct of trade or commerce in violation of [CUTPA], the use and employment of which resulted in ascertainable loss of money to the [plaintiffs]." The amended complaint prays for the following relief: "compensatory damages; punitive damages; multiple damages; rescission; estoppel; constructive trust; disgorgement; accounting, costs, expenses, including attorney's fees, and prejudgment interest; and such other and further relief as the court deems just and proper."

The parties agreed that liability with respect to the first (fraud), fourth (CUTPA) and eighth (theft) counts would be decided by the jury, and that the court would decide liability with respect to the third (rescission) and fifth (unjust enrichment) counts, and the remedy with respect to any counts for which the defendant was found liable by the jury. Interrogatories were submitted to the jury, which found in favor of the plaintiffs on the CUTPA count,[3] without interest, and for the defendant on the fraud and theft counts. The court directed a verdict with respect to the second, sixth, seventh, ninth, tenth, eleventh and twelfth counts of the amended complaint. The trial court rendered judgment in favor of the defendant on the rescission and unjust enrichment counts.[4]

---

[2] The plaintiffs sued two additional parties but withdrew the complaint as to those individuals prior to trial.

[3] The interrogatories were general in nature and did not indicate which of the alleged actions by the defendant, if not all, the jury considered to be in violation of CUTPA.

[4] The plaintiffs did not ask the trial court to articulate its factual and legal basis for rendering judgment in favor of the defendant on the rescission

By memorandum of decision dated February 16, 1996, the trial court awarded the plaintiffs restitution in the amount of $483,000 and attorney's fees of $80,000 as their remedy for the defendant's CUTPA violation. The trial court declined, however, to rescind the stipulated judgment because the plaintiffs failed to move to open it within four months.

In summary, although he must return some of the funds paid to him by the plaintiffs and pay their attorney's fees, the defendant, *who was found by the jury to have violated CUTPA*, still owns both the Branford and Hamden car wash businesses, has the $453,000 deposit and is the plaintiffs' judgment creditor in the amount of $448,598.18 plus interest at 10 percent per annum since July 29, 1991, because the trial court refused to rescind the stipulated judgment.

The issue before this court is whether the trial court had the power to rescind the stipulated judgment on the basis of the jury's finding that the procurement of the stipulated judgment by the defendant was in violation of CUTPA. Because I would find that the restitution awarded by the trial court is not equitable and results in an injustice, I respectfully dissent.

"In an equitable proceeding, the trial court may examine all relevant factors, to ensure that complete justice is done. *Reynolds* v. *Ramos*, 188 Conn. 316, 320, 449 A.2d 182 (1982). The determination of what equity requires in a particular case, the balancing of the equities, is a matter for the discretion of the trial court. *Kakalik* v. *Bernardo*, 184 Conn. 386, 395, 439 A.2d 1016 (1981). *Harbour Landing Development Corporation* v. *Herman*, 27 Conn. App. 98, 101–102, 603 A.2d 779 (1992). Our review is quite limited, and is usually confined to a determination of whether the trial court's decision to

and unjust enrichment counts. Therefore, we do not review the judgment on those counts.

award the particular equitable relief was reasonable. *Reynolds* v. *Ramos*, supra, 321. . . . On appellate review, the ultimate issue is whether, according to recognized principles of equity, abuse of discretion is manifest or an injustice appears to have been done. *Thomas* v. *Thomas*, 159 Conn. 477, 480, 271 A.2d 62 (1970)." (Citation omitted; internal quotation marks omitted.) *Banthin* v. *Shoreline Plumbing & Heating Supply Corp.*, 30 Conn. App. 637, 640, 621 A.2d 769 (1993). Where the proceedings are equitable and the statute is remedial in nature, a trial court's refusal to open a judgment must "be consistent with the authority conferred upon that court 'to modify the terms of the judgment in order to achieve an outcome fairer to the parties than provided by the original judgment in light of conditions as they appear when the motion to open is decided. . . . [E]ither a forfeiture or a windfall should be avoided if possible.' *Farmers & Mechanics Savings Bank* v. *Sullivan*, 216 Conn. 341, 352–54, 579 A.2d 1054 (1990) . . . ." (Citations omitted.) *Society for Savings* v. *Stramaglia*, 225 Conn. 105, 110, 621 A.2d 1317 (1993).

"CUTPA was first enacted in 1973. It was originally intended to be the state's counterpart to the Federal Trade Commission Act. R. Langer & D. Ormstedt, 'The Connecticut Unfair Trade Practices Act,' 54 Conn. B. J. 388, 389 (1980). The purpose of the statute was to provide a meaningful avenue of redress for consumers who had been victims of unfair or deceptive trade practices by providing for private as well as public enforcement." *Gill* v. *Petrazzuoli Bros., Inc.*, 10 Conn. App. 22, 31–32, 521 A.2d 212 (1987).

Section 42-110b (d) provides: "It is the intention of the legislature that this chapter be remedial and be so construed." "Remedial statutes are to be liberally construed in favor of those whom the legislature intended to benefit. *Hartford Fire Ins. Co.* v. *Brown*, 164 Conn. 497, 503, 325 A.2d 228 (1973)." *Hinchliffe* v.

*American Motors Corp.*, 184 Conn. 607, 615 n.4, 440 A.2d 810 (1981). "The importance of equitable remedies to the CUTPA scheme is underscored by the fact that equitable relief is expressly provided for in two separate parts of the statute. General Statutes § 42-110g (a) and (d)." *Hinchliffe* v. *American Motors Corp.*, supra, 618.

Section 42-110g provides in relevant part: "(a) Any person who suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment of a method, act or practice prohibited by section 42-110b, may bring an action . . . . The court may, in its discretion . . . provide such equitable relief as it deems necessary or proper. . . . (d) . . . In any action brought under this section, the court may, in its discretion, order, in addition to damages or in lieu of damages, injunctive or *other equitable relief.* . . ." (Emphasis added.)

Our Supreme Court addressed the nature of the equitable remedies applicable to CUTPA cases at some length in *Associated Investment Co. Ltd. Partnership* v. *Williams Associates IV*, 230 Conn. 148, 645 A.2d 505 (1994). "Our conclusion that CUTPA does not give rise to a legal cause of action grounded in the common law comports with the essentially equitable character of the statutory scheme. Equity may be described as a system of positive jurisprudence founded upon established principles which can be adapted to new circumstances where a court of law is powerless to give relief. *Harper* v. *Adametz*, 142 Conn. 218, 223, 113 A.2d 136 (1955). A hallmark of equity is its capacity of expansion [beyond the common law], so as to keep abreast of each succeeding generation and age. 1 J. Pomeroy, Equity Jurisprudence (5th Ed. 1941) § 67, p. 89. CUTPA, like equity, reaches beyond traditional common law precepts in establishing a fairness standard designed to grow and broaden and mold [itself] to meet circumstances as they arise . . . . M. Handler, The Jurisdiction of the Federal

Trade Commission Over False Advertising, 31 Colum. L. Rev. 527, 535 (1931). The resolution of claims requiring the application of broadly defined and deeply rooted public values such as the statute's elusive, but [legislatively] mandated standard of fairness; *Federal Trade Commission* v. *Sperry & Hutchinson Co.*, [405 U.S. 233, 244, 92 S. Ct. 898, 31 L. Ed. 2d 170 (1972)]; has historically been the function of a court of equity. 1 J. Pomeroy, supra, §§ 59, 67." (Internal quotation marks omitted.) *Associated Investment Co. Ltd. Partnership* v. *Williams Associates IV*, supra, 159.

"The significance of the broad equitable remedies authorized under CUTPA is underscored by the express language of § 42-110g (d), which in affording the court discretion to order injunctive and other equitable relief *in lieu* of damages, 'contemplates plaintiffs' judgments which do not include an award of money damages.' [*Hinchliffe* v. *American Motors Corp.*, supra, 184 Conn. 618]." (Emphasis in original.) *Associated Investment Co. Ltd. Partnership* v. *Williams Associates IV*, supra, 230 Conn. 160. In short, the expansive scheme of CUTPA provides " 'an action more flexible and a remedy more complete than did the common law'; *Hinchliffe* v. *American Motors Corp.*, [supra, 617] . . . ." *Associated Investment Co. Ltd. Partnership* v. *Williams Associates IV*, supra, 156.

This court discussed the equitable remedy of rescission in the context of a misrepresentation in a land transaction in the case of *Kavarco* v. *T.J.E., Inc.*, 2 Conn. App. 294, 478 A.2d 257 (1984).[5] "Rescission of a contract is an appropriate remedy if there has been a material misrepresentation of fact upon which a party relied and which caused it to enter the contract. *State*

---

[5] This court found that the trial court improperly failed to mention in its memorandum of decision the burden of proof it applied to the allegation of fraud and remanded the case for a new trial. *Kavarco* v. *T.J.E., Inc.*, supra, 2 Conn. App. 296, 302.

v. *Hartford Accident & Indemnity Co.*, 136 Conn. 157, 167, 70 A.2d 109 (1949). The material misrepresentation, when made in connection with the sale of land, may be an innocent misrepresentation. *Slocum* v. *Leffler*, 272 Or. 700, 701, 538 P.2d 906 (1975); see *Albany Motor Inn & Restaurant, Inc.* v. *Watkins*, 85 App. Div. 2d 797, 798, 445 N.Y.S.2d 616 (1981). At the option of the defrauded party, where there has been fraud in the inducement of the contract, the contract is voidable or subjects the defrauding party to a suit for damages. *A. Sangivanni & Sons* v. *F.M. Floryan & Co.*, 158 Conn. 467, 472, 262 A.2d 159 (1969). The party defrauded has the option of electing either to rescind the contract or to claim damages for the breach of the contract. *Pacelli Bros. Transportation, Inc.* v. *Pacelli*, 189 Conn. 401, 409–10, 456 A.2d 325 (1983). To seek rescission is to waive any claim for damages arising from a breach of the contract. *Duksa* v. *Middletown*, 192 Conn. 191, 197, 472 A.2d 1 (1984). The remedy of rescission and restitution is an alternative to damages in an action for breach of contract. 12 Williston, Contracts (3d Ed. Jaeger) § 1455, p. 14. Rescission, simply stated, is the unmaking of a contract. It is a renouncement of the contract and any property obtained pursuant to the contract, and places the parties, as nearly as possible, in the same situation as existed just prior to the execution of the contract. A condition precedent to rescission is the offer to restore the other party to its former condition as nearly as possible. *Duksa* v. *Middletown*, supra [197]; *Keyes* v. *Brown*, 155 Conn. 469, 476, 232 A.2d 486 (1967)." *Kavarco* v. *T.J.E., Inc.*, supra, 298–99.[6]

*Kavarco* is particularly instructive with respect to the facts and the equities of the case now before this court. In *Kavarco*, the plaintiffs' claim for relief was basically rescission. "Their complaint alleges that their

---

[6] The plaintiffs in the present case actually returned the subject business and property to the defendant prior to commencing suit.

purchase was induced by the representation of the defendants to them that the defendants would develop or allow to be developed the surrounding lots in the subdivision as single family residences. It is undisputed that at the time of the conveyance to the plaintiffs all of the lots, including the one conveyed to them, were actually located in a multiple family zone under existing zoning laws, and that the warranty deed conveying title to them stated that the premises were conveyed subject to the 'limitations of use imposed by governmental authority.' The offer to purchase signed by the parties stated that the buyers did not rely on any representations not contained in the document." Id., 297. "After the conveyance to the plaintiffs, the defendants, in fact, constructed a multi-family dwelling within the subdivision and obtained permits to construct multi-family dwellings on other lots within the subdivision." Id., 300.

" 'Fraud vitiates all contracts, written or verbal and sealed or unsealed.' *Feltz* v. *Walker*, 49 Conn. 93, 98 (1881). This principle is certainly applicable to the stipulated judgment . . . relied upon by the defendant in this case." *Pacelli Bros. Transportation, Inc.* v. *Pacelli*, supra, 189 Conn. 409. "The distinction between fraud in the form of an express misrepresentation and in the form of nondisclosure becomes significant where a damage award rather than avoidance of the contract is the remedy sought. Although a cause of action sounding in fraud was cognizable both at law and in equity, courts exercising equitable jurisdiction broadened the legal conception of fraud as an affirmative misrepresentation to include more subtle guises, such as nondisclosure. 37 Am. Jur. 2d, Fraud and Deceit § 326. That there may be a fraud in the view of a court of equity, which is not so at law, has long since been declared. *Broome* v. *Beers*, 6 Conn. 198, 211 (1826). Fraud, indeed, as known to equity jurisprudence, properly includes all acts, omissions and concealments, by which an undue

and unconscientious advantage is taken of another.
. . . *Story* v. *Norwich & Worcester R. Co.*, 24 Conn.
94, 113–14 (1855)." (Internal quotation marks omitted.)
*Pacelli Bros. Transportation, Inc.* v. *Pacelli*, supra, 410.

Such is the case now before this court where the
defendant induced the plaintiffs to enter into the stipu-
lated judgment, in part, with a promise to transfer own-
ership of the Hamden car wash to the plaintiffs, pay
their attorney's fees and forgive all debts related to the
Branford car wash. The defendant never transferred
ownership of the Hamden car wash to the plaintiffs
but took it into bankruptcy. The defendant also never
forgave the plaintiffs' debts or paid their attorney. "A
representation about a promise to do something in the
future, when linked with a present intention not to do
it, is a false representation. *Paiva* v. *Vanech Heights
Construction Co.*, 159 Conn. 512, 515, 271 A.2d 69
(1970)." *Kavarco* v. *T.J.E., Inc.*, supra, 2 Conn. App. 300.

On the facts before it here, the trial court, sitting as
a court of equity pursuant to CUTPA, had the authority
to rescind the original contract for the sale of the Bran-
ford car wash and the contract for the stipulated judg-
ment in light of the jury's finding that the defendant's
behavior was in violation of CUTPA. Instead, the trial
court held that it would not rescind the stipulated judg-
ment because the plaintiffs had failed to move to open
the judgment within four months of the judgment's hav-
ing been entered. This holding permits the defendant
further to exploit the plaintiffs to whom he said that
he would transfer the Hamden car wash, only to put
the business in bankruptcy two weeks before the end
of the four month period in which to open the stipu-
lated judgment.[7]

---

[7] The stipulated judgment was entered July 29, 1991; the petition in bank-
ruptcy was filed November 15, 1991. There is no evidence as to when the
plaintiffs learned of the filing. I do note that the plaintiffs were *not* listed
as creditors on the bankruptcy petition.

"The recent weight of authority is that the right to rescind a contract for the sale of land, or a contract for the sale of a business, or a lease, is not necessarily destroyed because the buyer failed to make an independent investigation which would have revealed that the representation upon which he relied was false. See *Pacelli Bros. Transportation, Inc.* v. *Pacelli,* supra, [189 Conn.] 409; *Besett* v. *Basnett,* 389 So. 2d 995, 998 (Fla. 1980); *National Conversion Corporation* v. *Cedar Building Corporation,* 23 N.Y.2d 621, 627–28, 246 N.E.2d 351, 298 N.Y.S.2d 499 (1969); *Slocum* v. *Leffler,* supra, [272 Or. 704]; *Wilson* v. *Zimmerman,* 261 Or. 528, 532–33, 495 P.2d 713 (1972).

"To shield a seller with a buyer's negligence in not finding out whether the representation was true or false would be to give a seller the fruit of his falsehood. The defendants' argument raises the issue of whether the law should choose either to allow the person who fraudulently misrepresented a basic fact to use the armament of caveat emptor to escape liability, or not to require the person to whom the misrepresentation was made to conduct an independent investigation as to the truth of an ascertainable fact. The Restatement chooses the latter. 2 Restatement (Second), Torts § 540. This court does also." *Kavarco* v. *T.J.E., Inc.,* supra, 2 Conn. App. 301–302.

In this case, I would not permit the defendant, who did not disclose the records of the Branford car wash to the plaintiffs because it was a "cash business" and who, for "tax reasons," did not want to include the transfer of the Hamden car wash in the stipulated judgment, to take advantage of the plaintiffs' having neglected to open the stipulated judgment within four months. The trial court, acting within its equitable powers, could easily have granted the plaintiffs' motion to

consolidate its motion to open the stipulated judgment[8] with the trial of this case and rescinded the stipulated judgment as partial remedy for the defendant's CUTPA violation. Its failure to do so has granted the defendant a windfall.

The case in which the stipulated judgment entered was a summary process action. Our Supreme Court has held that equity applies in summary process actions. See *Fellows* v. *Martin*, 217 Conn. 57, 584 A.2d 458 (1991). "[E]quity abhors . . . a forfeiture. *Menzies* v. *Fisher*, 165 Conn. 338, 357, 334 A.2d 452 (1973) [*House, C. J.*, dissenting], quoting *Pierce* v. *Staub*, 78 Conn. 459, 466, 62 A. 760 (1906); *Sheets* v *Selden*, 74 U.S. (7 Wall.) 416, 421, 19 L. Ed. 166 (1868). It is well settled that equity will relieve against the forfeiture of a lease for nonpayment of rent. *Kann* v. *King*, 204 U.S. 43, 27 S. Ct. 213, 51 L. Ed. 360 (1907); *Sheets* v. *Seldon*, supra, 421; 1 Restatement (Second), Property, Landlord and Tenant § 12.1, comment (n); J. Eaton, Handbook of Equity Jurisprudence (2d Ed.) § 27; H. McClintock, Handbook of Equity § 31; 2 J. Pomeroy, Equity Jurisprudence as Administered in the United States of America (5th Ed.) § 453; 3 J. Story, Equity Jurisprudence (14th Ed.) § 1727; see *Nicoli* v. *Frouge Corporation*, 171 Conn. 245, 246, 368 A.2d 74 (1976); *Thompson* v. *Coe*, 96 Conn. 644, 115 A. 219 (1921). This ancient principle allows relief because [i]n reason, in conscience, in natural equity, there is no ground to say because a man has stipulated for a penalty in case of his omission to do a particular act (the real object of the parties being the performance of the act), that if he omits to do the act he shall suffer an enormous loss wholly disproportionate to the injury to the other party. 3 J. Story, supra, § 1728. The penalty is the forfeiture of the leasehold, imposed for omission to do a particular act, that is, to pay rent; if the payment

---

[8] The plaintiffs filed a motion to open the stipulated judgment on September 27, 1993.

may be secured without a forfeiture, equity will not permit a forfeiture. J. Eaton, supra, § 34; 2 M. Friedman, Leases (2d Ed. 1983) § 16.2; H. McClintock, supra, § 31; J. Story, supra [§ 1728]; 2 J. Taylor, American Law of Landlord and Tenant (9th Ed.) § 495; 2 H. Tiffany, Law of Landlord and Tenant § 194 (3)." (Internal quotation marks omitted.) *Fellows* v. *Martin*, supra, 65–66.

In this case, the defendant's position is much improved over that he was in before he sold the Branford car wash to the plaintiffs. He has the $453,000 down payment. The Branford car wash was returned to him, as well as the personal property in which he had a security interest, and he is free to lease or operate the business. The defendant has a stipulated judgment of $448,598.18 with postjudgment interest. The amount due under the stipulated judgment exceeds the amount of the CUTPA award to the plaintiffs. The plaintiffs, however, are in a worse position than they were in before the sale. They have forfeited their deposit, they owe more on the stipulated judgment than was awarded them for the defendant's CUTPA violation and they have no car wash business.

Therefore, I would find that under CUTPA the trial court had the authority to rescind the entire transaction, including the stipulated judgment, and to order restitution to make the plaintiffs whole. See *Associated Investment Co. Ltd. Partnership* v. *Williams Associates IV*, supra, 230 Conn. 148; *Hinchliffe* v. *American Motors Corp.*, supra, 184 Conn. 607. I would reverse the judgment and remand this case to the trial court to give the plaintiffs a new hearing in damages consistent with this opinion.

Accordingly, I dissent.