[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The plaintiff, Roaring Brook Campground Association, Inc. (RBC), has brought this action to foreclose a judgment lien filed by RBC against the defendant, Roaring Brook Associates Limited Partnership (RBA), after a stipulated judgment had been entered by the court, (Kaplan, J.), at the request of both parties in the amount of $19,400 on July 31, 1996, the consideration for which was stated to be the settlement of a prior action which was pending at that time between the same parties and the withdrawal of a counterclaim which had been filed by RBA against RBC in that action.
RBA admits in its answer that RBC obtained a judgment against it, but alleges in its first and second special defenses, and in the first three counts of its counterclaim, that it is the owner and holder of a special declarant right to remove and sell timber from RBC's cooperative campground, and that it had notified RBC that it would use the profits from the exercise of its timber rights to satisfy the debt underlying the judgment lien which is CT Page 10514 being foreclosed in this action. The fourth count of the counterclaim states that the lien covers more than sufficient property to reasonably secure the judgment, and that it is therefore entitled to a release of the excess property covered by the lien pursuant to § 52-380f of the General Statutes.
RBC's defense to RBA's claim that the underlying debt would have been paid if it had been permitted to exercise its right to remove timber from the property is that the same claim was asserted in its counterclaim in the previous action and is therefore barred under the doctrine of res judicata. RBA argues in its trial brief that the counterclaim was withdrawn by the defendant in a written withdrawal dated July 29, 1996, and that because "the pleadings contained no claims whatsoever by the Defendant against the Plaintiff [the] judgment could not have related to a claim that the Defendant raised, or could have raised on the pleadings as they existed" on July 31, 1996, the date on which the stipulated judgment was entered by the court.
It is presumed that the parties to a stipulated judgment intended to settle all aspects of the controversy between them, including all of the issues raised by the papers comprising the record. Connecticut Water Co. v. Beausoleil, 204 Conn. 38, 49
(1987). This presumption will be applied where it is apparent from the judgment itself and the other pertinent documents, including the transcript of the proceeding in which the judgment was approved by the court, that the issues underlying the res judicata defense were intended by the parties to be resolved as a part of the judgment of settlement. Gagne v. Norton,189 Conn. 29, 35 (1983).
A party to a stipulation is not entitled to withdraw from the agreement unilaterally and can only obtain such relief by court action. Sinicropi v. Milone, 915 F.2d 66, 69 (2d Cir. 1990). "The issue is not what the defendant's subjective understanding of the agreement was but whether . . . . at the time the stipulation entered on the court record, a reasonable person would conclude . . . . that the defendant fully and completely understood and freely consented to the terms of the stipulation." Gillis v.Gillis, 214 Conn. 336, 341 (1990).
The documents in the record that tend to confirm the intention of the parties to resolve all aspects of the controversy include the statement in their joint motion for the entry of judgment that RBC entered into an agreement with RBA and CT Page 10515 its general partner, Robert Priore, on March 7, 1992, in settlement of two separate lawsuits brought by RBC against the defendants, and that the judgment itself states that the defendants "shall be jointly and severally liable to [RBC] in the amount of $19,400.00." It should also be noted that the judgment states that it shall not be modified except upon application to the court, and that counsel expressly deleted a provision in the proposed judgment that the court would retain "jurisdiction over the parties for the purposes of enforcing this order . . . ." prior to the actual entry of judgment by the court.
The intention of the plaintiff to resolve and finally put to rest the issue underlying Priore's res judicata defenses as well as his counterclaim, namely, his offer to the plaintiff to use his purported timber rights to discharge his obligation to pay the underlying debt, is clearly stated in the transmittal letter from RBC's counsel dated July 30, 1996, enclosing the parties' joint motion for the entry of judgment, copies of which were sent to the court and Priore's attorney. She expressly states in that letter that "[c]ounsel for the defense has filed or will file a withdrawal of his counterclaim, (copy enclosed)."
The proposed judgment was read into the record at 3:45 p. m. on July 31, 1996, and the court left no doubt as to the intention of the parties with respect to the res judicata claims asserted in the defendant's pleadings when it expressly stated that "as further consideration for this stipulation of the parties, the counterclaim filed by the defendant [RBA and Priore] is hereby withdrawn." RBC's transmittal letter of July 30th, the joint motion for judgment and two copies of the withdrawal of the defendant's counterclaim dated July 29, 1996 were all time-stamped on July 31, 1996, at 4:07 p. m. by the clerk of the court.
The court concludes that it is apparent from all of the relevant documents and its review of the transcript in which the proposed judgment was approved by the court that the issue of res judicata pleaded by the defendant in its counterclaim was intended by counsel, at least, to be resolved in the plaintiff's favor, Priore's subjective understanding to the contrary notwithstanding. Where the sole claim of a party to a stipulated judgment is that there was a mistake as to the meaning of the judgment "[t]he flaw in [his] argument is that the mistake must be mutual; a unilateral mistake will not suffice [and] after the four month period [for opening such judgments] has elapsed", if no motion to open the judgment has been filed within the CT Page 10516 statutory period, the trial court lacks jurisdiction to open the stipulated judgment. Solomon v Keiser, 22 Conn. App. 424, 427
(1990).
The failure of a party to a stipulated judgment to file a motion to open that judgment and to request the court that it be modified or rescinded within four months of its entry, deprives the court of its jurisdiction to do so within the meaning of § 52-212a of the General Statutes and § 17-4 of the Practice Book (1998). Kim v. Magnotta, 49 Conn. App. 203, 208
(1998). In this case, moreover, in addition to requiring that any modification of its terms be approved by the court within the four month statutory period, the parties chose to delete from the proposed judgment the original provision that the court "retains jurisdiction over the parties for the purposes of enforcing this order", thereby precluding any claim that the court had continuing jurisdiction. Id. 211.
The only issue remaining for determination by the court is the question of the continued viability of the defendant's fourth count of its counterclaim alleging that it is entitled to a release of excess property "which is not needed for the reasonable security of the judgment debt" within the meaning of § 52-380f of the General Statutes. That issue, which has not been briefed by counsel implicates the general rule that because a stipulation is a contract between the parties approved by the court, its terms may not be extended beyond the agreement entered into the record and the court "may not enlarge or lessen the scope of the judgment." Bank of Boston Connecticut v. DeGroff,31 Conn. App. 253, 256 (1993).
In a stipulated judgment, or a consent decree, the parties voluntarily terminate their litigation by assenting to specified terms, which the court agrees to enforce as a judgment. 46 Am.Jur.2d, Judgments, § 207 (1994). However, a trial court has no power to supply terms, provisions or details not previously agreed to by the parties and it may not expand or contract their agreement as set forth in the consent judgment. Id. § 216.
Despite the fact that it is usually presumed that the parties to a consent decree intended to settle all aspects of their controversy, the preclusive effect of such a judgment must be measured by the actual intent of the parties. 46 Am.Jur.2d, Judgments, § 218. In this case, it is at least arguable that CT Page 10517 both parties have agreed that what the defendant refers to as its "marshaling" defense was intended by them to be reserved for the court' s determination based on the appraisal evidence offered at the trial, although the stipulation on its face appeared to contemplate a money judgment only, without regard to the underlying liens or to the statutory remedy invoked by the defendant in its sole remaining counterclaim under § 52-380f
of the General Statutes. Id.
RBC's brief states that it seeks to foreclose liened property interests consisting of twelve mortgages and three cooperative campsites to satisfy its judgment against RBA for $19,400, as well as costs and attorneys' fees in the amount of $7,556.80. The testimony of the plaintiff s expert, Robert Morra, valued the mortgage interests at $9,816 due to such factors as foreclosure costs, carrying costs and the low demand for campsites, while the appraiser called by the defendant, Joanne Gober, equated the value of the mortgages with the market value of the campsites and conceded in the course of her testimony that she had no information about the collectibility of any of the mortgages and that it was not a consideration in the forming of her opinion in this case despite the fact that RBA, in its pretrial disclosure admitted that no payments had been made on any of the mortgages since 1992, that all of the loans were in default, and that no collection efforts had been made by or on behalf of the defendant.
The opinions of experts as to the value of an interest in real property, such as an interest secured by a mortgage, must show a fair and reasonable basis for their conclusions, including the application of sound principles as well as factual knowledge that enables them to give information which will assist the trier of fact in determining the ultimate issue. 31A Am.Jur.2d, Expert and Opinion Evidence, § 334 (1989). "The testimony of a witness as to the value of an interest in land should be rejected, however, where the basis for a test as to its reliability is not furnished by a statement of facts on which it is based, or where the basis of fact does not appear to be sufficient." Ward v. Deck, 419 S.W.2d 286 at 290 (Mo.App. 1967).
The only other testimony offered by the defendant to counter Morra's assumption that all of the mortgages were nonperforming, that is, that the mortgagors had not been making payments for some time and that there was no reasonable prospect of repayment, was Priore's conclusory statement that the mortgages were of CT Page 10518 "higher than average collectibility" and were worth at least the value of the campsites notwithstanding his pretrial disclosure to the contrary. While the general rule is that a property owner is competent to testify as to the reasonable market value of his own land, where the reliability of his testimony is not supported by the credible evidence or lacks a factual basis, his opinion loses its probative value and his testimony should be rejected because "[j]udicial liberality in permitting an owner to testify as to his opinion of [its value] does not allow an unrestricted right to engage in guesswork ." Carmel Energy, Inc. v. Fritter,827 S.W.2d 780 at 783 (Mo.App. 1992).
The defendant concedes in its brief that the plaintiff' s appraiser used as his starting point the average sales price found by the court (Klaczak, J.) for campsites in a previous foreclosure action involving the same campground which was decided on March 17, 1995, but asserts that Morra's opinion is substantially weakened by the fact that his written appraisal dated July 15, 1997, and his testimony at the trial about a week thereafter, concerned the valuation of seventeen campsites, only twelve of which were later found to be actually subject to the plaintiff's judgment liens. The record, however, shows that as stated in the plaintiff's post trial brief, by agreement of counsel for the parties, Morra's formula for deducting foreclosure and marketing costs and fees as well as discounts and other adjustments was applied to the twelve mortgages listed in the third amended complaint which was subsequently filed on January 13, 1998, by the plaintiff without objection on the part of opposing counsel.
The pretrial disclosure, which was made on May 22, 1997, about two months before the trial testimony of the two appraisers, admitting that no payments had been made on any of the twelve mortgages since 1992, that all of the loans were in default, and that no collection efforts had been made by or on behalf of the defendant, was obviously relied upon by Morra as the factual basis for his conclusion that the mortgages in question were nonperforming. Gober, on the other hand, in the course of her redirect examination, conceded that her opinion of the value of the underlying property would have been less if information of that kind had been provided to her, but that it had not, and that she therefore "couldn't possibly give an opinion on that basis."
The court concludes that based upon all of the credible CT Page 10519 evidence offered at the trial, including the testimony of the treasurer of RBC, Arthur Allaire, concerning his efforts to collect from the owners of the campsites, as well as Priore's responses to the plaintiff's requests for disclosure and production, Morra's conclusions "that the debt for each of these mortgages is uncollectible [because] of the age of the debt, the lack of any recent payment history and the lack of successful collection efforts against the same debtors for common charge assessments [and that his opinion that] the value of the subject mortgages [is] the value of the campsites less all related expenses less a discount for risk factor and present value of the total sales price . . . " (Plaintiff's Exhibit J, p. 3), are reasonable, particularly in view of Morra's familiarity with the subject properties because of prior litigation and his qualifications for evaluating mortgage interests. While Gober acknowledged in the course of her testimony that the valuation of mortgages is not normally performed by real estate appraisers and that "it is not common for a real estate appraiser to appraise the mortgage or the discounted value of that mortgage", Morra stated that he had satisfied the requirements to be certified as a mortgage broker in this state and that his experience has included the valuation of nonperforming mortgages.
Although the court itself has raised the issue of what it has referred to herein as the "continued viability" of the fourth count of the defendant's counterclaim in that it alleges it is entitled to a release of excess property "which is not needed for the reasonable security of the judgment debt" within the meaning of § 52-380f of the General Statutes, it has elected to overlook the inconsistency between RBA's claim of law and the terms of the stipulated judgment between the parties because they have purported to "reserve" that question by mutual consent and the case has been tried and briefed based on the apparent assumption that the statute is applicable as a matter of law. In this connection, it is of more than passing significance that the joint stipulation for a money judgment and the transcript of the proceeding conducted by the court on July 31, 1996, make no reference whatsoever to the defendant' s statutory claim, and the strong presumption that the parties to a stipulated judgment intended to settle all aspects of their controversy is reinforced by the fact that the court expressly stated at that time that the prior foreclosure action filed by the plaintiff in 1994 (Roaring Brook I) was to be withdrawn, as well as the action brought in 1996 to enforce the stipulated judgment (Roaring Brook II), thereby making the statutory remedy invoked by the defendant in CT Page 10520 its counterclaim in the second action unavailable to it because § 52-380f applies only to pending actions for the foreclosure of judgment liens.
While courts are ordinarily bound by the stipulations of the parties made in the course of their litigation, that rule cannot be invoked to bind the court in its determination of questions of law which is exclusively a judicial function, and virtually all jurisdictions recognize that stipulations as to the law are invalid and ineffective. 73 Am.Jur.2d, Stipulations, § 5 (1974). "Relief from erroneous stipulations is especially favored where the mistake made concerns a legal conclusion [because issues] of law are the province of courts, not of parties to a lawsuit, individuals whose legal conclusions may be tainted by self-interest . . ."; TI Federal Credit Union v. Delbonis,72 F.3d 921 (1st Cir. 1995); and accordingly it has been held that it is improper for the parties or their attorneys to determine by agreement questions as to the proper construction or application of a statute. Id.; Pyne v. New Haven, 177 Conn. 456, 464-65
(1979).
For all of the foregoing reasons, judgment may enter for the plaintiff, Roaring Brook Campground Association, Inc., against the judgment debtors, Roaring Brook Associates Limited Partnership and Robert Priore, in accordance with the stipulated judgment entered by the court on July 31, 1996 for $19,400.00, as well costs and attorneys' fees in the amount of $7,556.80.
Harry Hammer Judge Trial Referee